[No. A075345. First Dist., Div. Two. Nov. 4, 1997.]

GERALD GRAHN et al., Plaintiffs and Respondents, v.
TOSCO CORPORATION, Defendant and Appellant.

1378

## COUNSEL

Tanke & Willemsen, Tony J. Tanke and Gary L. Simms for Defendant and Appellant.

Brayton, Harley, Curtis, Philip A. Harley and James L. Oberman for Plaintiffs and Respondents.

## OPINION

**RUVOLO, J.—**

### I.

#### INTRODUCTION

This is an appeal from a jury award of $1,074,420 in favor of respondents Gerald Grahn and his wife, Bonnie Grahn, for personal injury and loss of consortium resulting from his occupational exposure to asbestos. Grahn was the employee of an independent contractor, J. L. Thorpe & Sons (Thorpe), which performed insulation work at various locations throughout the Bay Area, including appellant Tosco Corporation's oil refinery (Tosco). The jury found Grahn's injuries partially resulted from Tosco's negligence and allocated 3 percent fault to Tosco, 60 percent fault to Grahn's employers, including Thorpe, and 37 percent fault to all others.

Tosco appeals, principally questioning whether, under the Supreme Court's decision in *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*), a hirer[1] of an independent contractor can be held liable in negligence for its own acts or omissions when an independent contractor's employee sustains work-related injuries that are also compensable by workers' compensation. As we explain in this opinion, we find *Privette* did not abrogate the law in California that a hirer of an independent contractor may be liable to the independent contractor's employee for the hirer's own independent fault. However, we conclude a number of significant instructional errors occurred during trial, particularly with regard to defining the standards applicable in determining when a hirer who is also in control of the premises where the work takes place can be

---

[1] Authorities refer interchangeably to the employer of an independent contractor as "employer," "principal," and "hirer." Not uncommonly, the person or entity is also referred to as the "general contractor," "owner," or "developer," depending on the relevant alternative status. To avoid potential confusion, wherever practical we will refer throughout this opinion to the employer of an independent contractor simply as the "hirer."

found liable to the employee of an independent contractor. These instructions were critical to a proper consideration by the jury of the liability issues, and the errors were accordingly prejudicial. We therefore reverse.

## II.

### FACTUAL BACKGROUND

At the time of trial respondent Gerald Grahn was a 51-year-old brick mason, who was employed from approximately 1963 to 1989 by Thorpe, one of the leading refractory installers in Northern California. Thorpe is an independent contractor specializing in installation and repair of refractory and insulation materials in high-temperature units such as furnaces, boilers, large industrial plants and shipyards, including all of the Bay Area's major refineries. Grahn worked for Thorpe at hundreds of different jobsites, principally tearing out and installing brick and insulation.

After Grahn was diagnosed with asbestos-related lung disease, he and his wife Bonnie brought an action for damages against approximately 200 defendants. Grahn alleged that he suffered from "a condition related to exposure to asbestos and asbestos-containing products." In addition to manufacturers and suppliers of various asbestos-containing insulation products, Grahn also sued a number of property owners, including Tosco, alleging that these defendants owned or controlled the premises at which Grahn worked on behalf of his employer and that during such work, he was exposed to airborne asbestos. He further alleged that these property owners, who had hired his employer as an independent contractor, either knew or should have known that he would be exposed to a dangerous condition while working for his employer at their premises.

The case proceeded to trial solely against Tosco after all other defendants either settled or were dismissed from the action. Grahn asserted three theories of negligence against Tosco. First, Grahn contended Tosco was negligent in hiring Thorpe to remove asbestos-containing materials without any indication Thorpe was licensed or qualified to engage in such work. Second, it was alleged that Tosco retained control over the details of the work performed by Thorpe, which created a separate legal duty based on the negligent failure to exercise control or supervision. Third, Grahn claimed Tosco was negligent in the use and maintenance of its premises thereby exposing others to an unreasonable risk of harm.

The evidence at trial showed Tosco purchased the premises at issue from Phillips Petroleum on April 1, 1976. Tosco refined gasoline and made other

petroleum products at the refinery and regularly hired independent contractors with specialized skills to repair, overhaul, and maintain refinery equipment.

Grahn worked at Tosco's refinery throughout his employment at Thorpe and remembered participating in a number of projects there after Tosco acquired the refinery in 1976. At trial, Grahn claimed he was exposed to airborne asbestos during these various work assignments on Tosco's premises. Obviously, none of the ripped-out materials from Grahn's jobs at Tosco were available for laboratory analysis; however, at trial Grahn attempted to prove these materials contained asbestos based primarily on the age and general appearance of the material being handled. For example, he recalled an extensive "rip-out" occurring at the refinery's Selas furnace in approximately 1986, at which time he removed not only insulation brick, but also block lining as far back as the furnace's breachings. As the ripped-out insulation material was dropped from heights as great as 60 feet, considerable dust was dispersed into the air. Grahn testified, "You would have a hard time seeing the person next to you for maybe two or three minutes until it starts clearing out, the air blowers moving it." He recalled wearing only a paper mask as respiratory protection on this job.

Grahn also remembered assisting in removing the lining from the refinery's No. 16 furnace, as well as replacing its transite roof and fireproofing the outside of the coker after a fire. Again, he recalled wearing paper respirators for safety protection on these jobs. In 1991, Grahn helped take the roof off the No. 3 boilerhouse, which was lined with block insulation. Also, in the 1990's, Grahn removed original brick and block insulation from the No. 27 boiler walls. Tosco never warned Grahn of the hazards associated with the asbestos present on its premises.

The jury returned its verdict on May 14, 1996, finding Grahn suffered from an asbestos-related disease and that Tosco's negligence was a cause of Grahn's asbestos exposure. The jury awarded compensatory damages to Grahn as follows: $12,420 for past medical expenses; $80,000 for future medical expenses; $6,000 for past loss of earnings; $650,000 for future loss of earnings; $216,000 of noneconomic damages; and $10,000 for future medical monitoring costs. The jury awarded Bonnie Grahn $100,000 for loss of consortium. The jury found Tosco had not acted with malice or oppression and declined to award punitive damages. Apportioning fault for Grahn's injuries, the jury allocated 3 percent to Tosco. The jury attributed 60 percent of the fault to Grahn's employers and 37 percent to all others. After the trial court denied Tosco's motion for a new trial, motion for judgment notwithstanding the verdict, and motion to vacate the judgment, this appeal followed.

## III.

## DISCUSSION

### A. *The Precedential Legacy of Privette*

The key to resolution of the parties' dispute is the correct interpretation of the impact of *Privette, supra*, 5 Cal.4th 689 on preexisting California tort law. Of course, no one questions *Privette*'s negative impact on the continued vitality of the peculiar risk doctrine[2] in California. Several intermediate appellate courts have written expansively on the effect of our Supreme Court's rationale in *Privette* on other theories of tort-based liability asserted against the hirers of independent contractors. However, they have not survived the 90-day "shelf life" of opinions chosen for review by our high court.[3] In the face of such daunting odds, we nevertheless add our voice to those who have been required to divine the scope of *Privette* pending further definitive word on the matters under review.

■ In *Privette, supra*, 5 Cal.4th 689, the Supreme Court held that a nonnegligent property owner who hires an independent contractor to perform inherently dangerous work should not be held vicariously liable under the peculiar risk doctrine for injuries to the independent contractor's employee occasioned solely by the independent contractor's negligence for which there exists workers' compensation. (*Id.* at p. 702.) The peculiar risk doctrine was created as one of several exceptions to the common law rule of nonliability of principals for the negligence of independent contractors. The doctrine permits civil recovery against the hirer of an independent contractor for injuries sustained as a result of the negligence of the contractor where the work involves a peculiar risk of harm in the absence of special precautions needed to eliminate that risk. (See Rest.2d Torts,[4] §§ 413, 416.) In these instances, a nondelegable duty is imposed on the hirer to ensure that reasonable safety precautions are implemented to reduce or eliminate the

---

[2]The Supreme Court used the phrase "peculiar risk" throughout *Privette, supra*, 5 Cal.4th 689, while noting that " 'special risk' " more accurately describes the doctrine. (*Id.* at p. 695.) For uniformity's sake we will likewise refer to the principle as "peculiar risk."

[3]The California Supreme Court has granted review in at least two cases to decide the extent of a hirer's liability to an independent contractor's employee after *Privette*: *Toland* v. *Sunland Housing Group, Inc.* (1995) 49 Cal.App.4th 212 [47 Cal.Rptr.2d 373] review granted March 14, 1996 (S050870) (argument limited to the issue of whether, after *Privette*, a subcontractor's employee has a cause of action for direct liability against a general contractor or developer), and *Voigts* v. *Brutoco Engineering & Construction Co.* (1996) 49 Cal.App.4th 354 [57 Cal.Rptr.2d 87] review granted December 11, 1996 (S056914) (case ordered held pending disposition of *Toland* v. *Sunland Housing Group, Inc.*).

[4]All further references to the Restatement Second on Torts are designated "the Restatement."

risk of injury. (*Privette, supra,* 5 Cal.4th at p. 694.) The *Privette* court unanimously concluded that ". . . when the person injured by negligently performed contracted work is one of the contractor's own employees, the injury is already compensable under the workers' compensation scheme and therefore the doctrine of peculiar risk should provide no tort remedy, for those same injuries, against the person who hired the independent contractor." (*Id.* at p. 696.)

The Supreme Court grounded its decision primarily on the policy consideration that there is no longer justification for retaining vicarious liability in this context because of the availability of guaranteed compensation under workers' compensation. (*Privette, supra,* 5 Cal.4th at p. 701.) The court noted that, unlike other employees, the employees of independent contractors had essentially been receiving an unwarranted windfall since they were able to recover both workers' compensation from their employers and tort damages from the hirer. This, in turn, resulted in the anomalous situation where hirers were better off, in terms of potential liability, having their own untrained workers perform dangerous tasks that could and should be performed by trained contractors. (*Id.* at p. 700.) Thus, the peculiar risk doctrine promoted a greater opportunity for injury to workers engaged in unusually dangerous work. The court concluded further that when a hirer is held liable under the peculiar risk doctrine for injuries to innocent bystanders or to an owner of neighboring property, the hirer may obtain equitable indemnity from the independent contractor responsible for the injuries. Yet when the person injured is an employee of the independent contractor, Labor Code section 3864 shields the negligent contractor from an action seeking equitable indemnity. Therefore, an additional significant policy justification for imposing peculiar risk liability on a nonnegligent party is missing, i.e., the ability of a nonnegligent party to be made whole by the party responsible for the injury. (5 Cal.4th at p. 701.)

On the basis of *Privette, supra,* 5 Cal.4th 689, the trial court quite easily ruled that Grahn could not proceed against Tosco under any theory of vicarious liability. However, the more taxing issue was whether, in the aftermath of the *Privette* decision, a hirer who was also the owner of premises where the work was to be performed had *any* independent duty of care to an independent contractor's employee. Grahn argued that *Privette* was both factually and legally distinguishable from his case. He pointed out that the hirer in *Privette* was a teacher who hired an independent contractor to install a new roof on his duplex—there was no evidence that anything the hirer in *Privette* did or did not do proximately caused the worker's injuries. Liability was imposed solely because special precautions had not been taken by the independent contractor to reduce or eliminate the risk of harm arising

from performance of the work. Grahn emphasized that the instant case, on the other hand, involved allegations that Grahn's injuries were the result of Tosco's "direct" negligence, not simply the result of negligence imputed to Tosco under the peculiar risk doctrine.

Thus, the trial court had to decide whether *Privette*'s reasoning was limited to situations where vicarious liability was imposed on a nonnegligent hirer, or whether its reasoning was broad enough to encompass bases of liability premised on common law tort theories other than peculiar risk. After considering both written and oral argument and revisiting the question numerous times, the trial court ruled that *Privette* abrogated a hirer's liability under theories grounded in principles of vicarious liability, but that a hirer continued to remain potentially liable under theories based on the hirer's own injury-producing negligence. On appeal, Tosco claims this ruling was error.

Relying on *Privette, supra,* 5 Cal.4th 689, Tosco seeks to have this court adopt a rule that any work-related injuries suffered by the employee of an independent contractor while working at another's premises are solely compensable through workers' compensation and that the hirer is immune from liability regardless of its independent fault. We do not believe this far-reaching effect is compelled by the rationale of *Privette.* In *Privette,* the court had before it only the issue of whether a peculiar risk theory could be used to hold a nonnegligent hirer liable under vicarious liability for the negligence of the independent contractor. Other theories of negligence liability based on the hirer's own conduct were not raised or addressed in *Privette.* As our Supreme Court counseled in *Ginns* v. *Savage* (1964) 61 Cal.2d 520 [39 Cal.Rptr. 377, 393 P.2d 689]: ■ "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" (*Id.* at p. 524, fn. 2.) Another court has cautioned: "An extract from an opinion must be read in the light of the subject there under discussion and with reference to the facts in that case, and rules applicable to the decision in which they appear cannot be repeated in exemplification of a theory different from that to which they were applied in the case wherein the opinion was rendered." (*Southern Cal. Enterprises* v. *Walter & Co.* (1947) 78 Cal.App.2d 750, 757 [178 P.2d 785].)

■ These admonitions have particular relevance to the instant case. While some of the underlying policy analysis in *Privette* applies to cases where injured workers seek to impose direct as opposed to vicarious liability upon the hirer, the claims in these actions are dissimilar in important ways from the singular claim advanced in *Privette.*

For example, *Privette*'s concern about the fundamental unfairness of imposing vicarious liability on a nonnegligent hirer is entirely inapplicable

where the hirer's own negligent conduct has caused or contributed to the worker's injury. As Professor Prosser explained, there is nothing at all "vicarious" about the liability that attaches to a hirer who itself is negligent: " 'In the first place, *quite apart from any question of vicarious responsibility,* the employer may be liable for any negligence of his own in connection with the work to be done. When there is a foreseeable risk of harm to others unless precautions are taken, it is his duty to exercise reasonable care to select a competent contractor, and to provide, in the contract or otherwise, for such precautions. So far as he gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others; and he must likewise interfere to put a stop to any unnecessarily dangerous practices, and make a reasonable inspection of the work after it is completed, to be sure that it is safe. *In all of these cases, he is liable for his personal negligence, rather than that of the contractor.*' " (*Risley* v. *Lenwell* (1954) 129 Cal.App.2d 608, 622 [277 P.2d 897], italics added, quoting Prosser on Torts at p. 483 (see Prosser & Keeton, Torts (5th ed. 1984) § 71, pp. 510-511, fns. omitted).)

The principle that everyone is responsible for one's own negligent acts is firmly entrenched in California law. Civil Code section 1714 reads, in pertinent part, "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ." Therefore, holding Tosco directly liable for its negligent acts does not place "an onerous burden" on a fault-free party. (*Privette, supra,* 5 Cal.4th at p. 701.) Unlike vicarious liability, which passes on the legal responsibility arising from the independent contractor's negligence to an otherwise fault-free party, in direct negligence cases the hirer is being held liable for its own conduct.

In attempting to extend *Privette*'s reasoning, Tosco complains that holding a negligent hirer liable to an independent contractor's injured employee would produce the same anomalous result under California workers' compensation law as holding a nonnegligent property owner liable. It emphasizes the *Privette* court's reasoning: "When an independent contractor causes injury to the contractor's own employee, the [Workers' Compensation] Act's 'exclusive remedy' provision shields the contractor from further liability for the injury. Yet, under the expansive view of the peculiar risk doctrine that has been adopted in California and a minority of other jurisdictions, the person who hired the independent contractor can, for the same injury-causing conduct of the contractor, be held liable in a tort action for the injuries to the contractor's employee. Because this expansive view produces the anomalous result that a nonnegligent person's liability for an injury is

greater than that of the person whose negligence actually caused the injury, it has been widely criticized. [Citations.]" (*Privette, supra,* 5 Cal.4th at p. 698.)

However, the workers' compensation system clearly recognizes and accommodates the availability of civil remedies for the injured worker as against negligent third parties. Labor Code section 3852 et seq. establish the procedures for an injured employee to pursue a third party civil suit for the same injury for which the worker has collected workers' compensation.[5]

Thus, while in most cases the workers' compensation system is the employee's exclusive remedy against the employer, it was never designed to constitute the employee's exclusive remedy against the universe. This was recognized recently by our Supreme Court in *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593 [7 Cal.Rptr.2d 238, 828 P.2d 140]: "Of course, an employer cannot be sued in tort for the work-related injury of an employee. The employer's sole liability is for benefits payable, regardless of fault, under the workers' compensation law. [Citation.] On the other hand, the employee may sue any other responsible person for 'all damages proximately resulting' from the injury ([Lab. Code,] § 3852.)" (*Id.* at p. 598.)[6] In *Privette* itself, the court recognized that the exclusivity clause, "does not preclude the employee from suing anyone else *whose conduct was a proximate cause of the injury.* [Citations.]" (*Privette, supra,* 5 Cal.4th at p. 697, italics added.)

The workers' compensation statutory scheme recognizes the independence of third party liability from that of the employer. The employer who has already paid workers' compensation benefits for the injury then has a right to recoup his workers' compensation payments vis-à-vis the negligent third party. (See Lab. Code, §§ 3852, 3856; *DaFonte* v. *Up-Right, Inc., supra,* 2

[5]Labor Code section 3852 states in pertinent part: "The claim of an employee, . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer."

[6]In *DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th 593, the Supreme Court provided an allocation "formula" for damages arising in a third party case involving an injured employee covered by worker's compensation, brought pursuant to Labor Code section 3852. In *DaFonte*, the court decided that Civil Code section 1431.2 applied to third party cases brought pursuant to Labor Code section 3852. Therefore, the court concluded: 1) an injured employee's judgment against a third party, such as Tosco herein, should be reduced by an amount attributable to the employer's proportionate share of fault, up to the amount of the worker's compensation benefits paid, although the *DaFonte* court did not reach the issue of what would be the proper allocation of the benefit offset in light of Civil Code section 1431.2; and, 2) that Civil Code section 1431.2 plainly limits a defendant's share of noneconomic damages to its own proportionate share of comparative fault. (2 Cal.4th at p. 604.) The court's decision in *DaFonte* seeks to ensure that the third party found to be negligent is held liable only for its comparative share of the fault and thus does not have an "onerous burden" placed on it.

Cal.4th at p. 598.) The judicial abolition of all hirer liability, based on *Privette*, would leave the injured party's employer, who has paid workers' compensation benefits, without recourse against the hirer whose negligence might have caused or contributed to the worker's injuries, thereby rendering Labor Code sections 3852 and 3856 ineffectual.

■ Furthermore, this expansive reasoning is also at odds with the well-recognized theory of liability for independent fault under the "dual capacity" doctrine. Under this rule, an employer who commits certain torts against an employee while occupying a legal status in addition to that of an employer may not assert the payment of compensation benefits to the injured worker as a defense to the employee's tort action.

An early case embodying this doctrine was *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266]. In *Bell*, an employee delivering his employer's propane gas product was not limited to workers' compensation benefits for injuries received when the gas exploded. The employee was allowed to maintain a tort action against the employer based on the independent duties which flowed from the employer's " 'extra' " status as a manufacturer. (*Id.* at p. 277.)

The doctrine was codified in 1982, with language modifying the principle as expounded by the Supreme Court in *Bell*. Labor Code section 3602 now provides in relevant part: "(b) An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances: [¶] . . . [¶] . . . (3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person." The argument made by Tosco for the extension of *Privette* to eradicate independent bases of liability for all employment-related injuries runs counter to the legislative objective set out by Labor Code section 3602, subdivision (b)(3).

Another illustration of the practical ramifications of broadly reading *Privette* is the case of *Rogness* v. *English Moss Joint Venturers* (1987) 194 Cal.App.3d 190 [239 Cal.Rptr. 387], where Division Four of this appellate district reversed a summary judgment for English Moss. English Moss was a joint venture of several entities, including plaintiff's employer, Monticello Homes. All were engaged in the construction of a single residence, and plaintiff allegedly received personal injuries when a wall collapsed while he was on site working as a carpenter. The court concluded that an employee of

one member of a joint venture is not barred from suing another joint venture partner in tort because the employee received compensation benefits from the employer joint venturer. If, as Tosco asserts, there exists a broad public policy against third party suits where the plaintiff receives compensation benefits, the joint venturer in *Rogness* would have avoided liability.

This critical distinction was duly noted by the court in the recent case of *Orosco* v. *Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659 [60 Cal.Rptr.2d 179]. In *Orosco,* plaintiff suffered personal injuries while an employee of Sun-Maid Growers, Inc. Summary judgment was entered in favor of Sun-Diamond, which was a joint venture partner of Sun-Maid. Plaintiff attempted to rely on *Rogness* v. *English Moss Joint Venturers, supra,* 194 Cal.App.3d 190 to support of its claim against Sun-Diamond, which was not independently at fault for causing plaintiff's injury, but which plaintiff claimed was responsible for the fault attributed to Sun-Maid. In discussing the ambiguity of the factual record in *Rogness* as to whether the negligence was the employer's or was the negligence of the joint venture itself, the *Orosco* court stated: "We have no disagreement with *Rogness* if the negligence in question was the negligence of the joint venture. *Rogness* would simply stand for the proposition that a joint venture is in the same position as any other third party tortfeasor who injures another's employee. [Citation.] [¶] If, on the other hand, *Rogness* were taken for the proposition that a joint venture may be derivatively liable in tort as a result of one venturer's negligent injury of that venturer's own employee, then *Rogness* would be erroneous, in our opinion. *Privette* v. *Superior Court, supra,* 5 Cal.4th 689 leads us to conclude there should be no such derivative liability for the nonnegligent joint venture." (*Orosco* v. *Sun-Diamond Corp., supra,* 51 Cal.App.4th at p. 1668.)

■ We agree with this analysis, and find it most applicable to the distinction we draw. *Privette* was not intended to supplant independent bases of liability which preexisted under California tort law. Its reach is limited to instances where the injured employee seeks to hold the hirer answerable in tort damages for the fault of the independent contractor, and where the employee has received compensation benefits on account of that fault. In *Privette*, the "windfall" bestowed on the injured worker under the peculiar risk doctrine results from the recovery of both benefits and tort damages for the *same conduct*—that of the independent contractor. Thus, the identical misconduct which gives rise to an entitlement to compensation benefits is also imputed to the hirer and forms the basis for its liability for tort damages to the employee. This is not true where the hirer is being asked to respond in damages for its *own* conduct. It is the independent culpability of the hirer which spawns the right of an independent action.

As illustrated, interpreting *Privette* as establishing a rule by which hirers are entirely free from the financial consequences of their own negligent

conduct vis-à-vis independent contractor employees analytically collides with long-standing common law and statutory doctrines. If Tosco's interpretation were adopted, it would necessarily result in mass elimination of precedent, encompassing statutes, numerous decisions of the California Supreme Court, and countless decisions of the Courts of Appeal. Despite our intrepid willingness to enter the post-*Privette* debate, we find "safe harbor" by adhering to the salutary principle of judicial restraint in leaving such a major change in substantive tort law to our Supreme Court.

To the extent Tosco's argument suggests that, under *Privette*, this court has an *obligation* to extend the Supreme Court's reasoning to situations where the hirer's liability is based on fault rather than status, we reject it. In doing so we join our colleagues who, after *Privette* was pronounced, have continued to recognize the potential liability of a hirer for its own negligence resulting in injuries to an independent contractor's employee. (*Orosco v. Sun-Diamond Corp., supra,* 51 Cal.App.4th at p. 1664; *Owens v. Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1668 [29 Cal.Rptr.2d 11]; *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1038 [43 Cal.Rptr.2d 158]; *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1125-1126 [63 Cal.Rptr.2d 359]; *Whitford v. Swinerton & Walberg Co.* (1995) 34 Cal.App.4th 1054, 1060 [40 Cal.Rptr.2d 688]; see also *Yanez v. U.S.* (9th Cir. 1995) 63 F.3d 870, 873-875.) We therefore conclude *Privette* is limited to cases of peculiar risk seeking to impose liability on hirers of independent contractors vicariously under the rubric of a nondelegable duty. It does not impair the right of an injured employee to sue the hirer for causes of action not based on principles of vicarious liability.

In the remaining portion of this opinion, we consider Tosco's argument that "even if some limited form of negligence liability against a premises owner survives *Privette, supra,* 5 Cal.4th 689, the three theories of negligence submitted to the jury were either invalid as a matter of California law or were based on incorrect and prejudicial jury instructions." The jury was instructed on the three common law theories of negligence asserted against Tosco. First, negligence in failing to hire a careful and competent contractor. Second, negligence in exercising control over the details of the work performed by the contractor. Third, negligence in the use and maintenance of the premises to avoid exposing others to an unreasonable risk of harm. We review each of the three theories submitted to the jury and the legal issues raised with respect to each of them.

B. *Liability for Negligent Hiring—Restatement Section 411*

Tosco questions whether the theory of negligent hiring should have been submitted to the jury. First, it argues claims of negligent hiring are

merely forms of vicarious liability, which are indisputably abolished by *Privette*. Alternatively, Tosco questions whether employees of independent contractors may sue for the negligent selection of their employer. Tosco contends the Supreme Court's policy language in *Privette* is a harbinger of its view on the infirmity of this theory of liability. We disagree with these arguments, based upon the reasons discussed in our general discourse on the scope of *Privette*, and for the following additional reasons.

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor [¶] . . . [¶] (b) to perform any duty which the employer owes to third persons." (Rest., § 411.) Grahn invoked this theory, claiming the evidence demonstrated that Tosco hired Thorpe to remove asbestos materials without any indication Thorpe was licensed or otherwise qualified to engage in such work. During closing argument, Grahn's counsel stated: "Did Tosco know Thorpe was unfit? Absolutely. Tosco knew Thorpe was unfit. It was because they were unfit that they wanted them to do the work. It's a lot faster to tear out asbestos, letting it drop from the ceiling without so much as a fan blowing than it is to use all the careful protections . . . . [¶] Moon suits slow you down. Bagging each piece slows you down. Carefully cleaning will slow you down. Keeping all other workers away from the vicinity definitely slows down the whole project."[7] Tosco claims this theory should never have been submitted to the jury.

Although Tosco characterizes negligent hiring as a "bogus legal theory" and questions whether it has any viability in California, numerous courts have recognized its applicability with approval. (*Roman Catholic Bishop* v. *Superior Court* (1996) 42 Cal.App.4th 1556, 1564-1565 [50 Cal.Rptr.2d 399]; *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 836 [10 Cal.Rptr.2d 748].) Furthermore, while out-of-state courts are divided on the issue, California courts have held that the duty of a hirer to employ a competent independent contractor runs to the employees of the negligently hired independent contractor, thereby allowing them to file suit against the hirer for injuries sustained on the job. (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 549 [5 Cal.Rptr.2d 674]; *Gettemy* v. *Star House Movers* (1964) 225 Cal.App.2d 636, 643-644 [37 Cal.Rptr. 441]; *Holman* v. *State of California* (1975) 53 Cal.App.3d 317, 336 [124 Cal.Rptr. 773].)

---

[7] In its reply brief, Tosco makes the argument for the first time that the evidence was insufficient to support submitting the negligent hiring theory to the jury. Issues raised for the first time on appeal in a reply brief, denying respondent an opportunity to respond to the issue, will not be addressed on appeal. (*American Drug Stores, Inc.* v. *Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432].)

Tosco contends *Privette* has abrogated this theory of liability, arguing that "[a]lthough the nomenclature, '*negligent* hiring,' suggests some negligence by the premises owner, the cornerstone of the theory is vicarious liability." (Original italics.) We disagree. Negligent hiring is a theory of personal rather than vicarious liability. The negligence of the contractor, in and of itself, is insufficient to impose liability on the hirer under section 411 of the Restatement. Instead, liability is imposed under ordinary negligence principles for hiring an independent contractor the hirer knows or should know is incompetent to do the work and where the contractor's incompetence results in injury to others. Therefore, while the hirer is subject to liability for injury immediately caused by the independent contractor's deficiencies, the hirer's culpability is based on its own negligence in entrusting the work to the independent contractor ab initio. (See Rest., § 411, com. b.)

Another important difference between a claim of negligent hiring and liability under the peculiar risk doctrine is that negligent hiring focuses on the inherent lack of competence in the character of the *contractor*, while peculiar risk turns on the *nature of the work* to be performed by an otherwise competent contractor. In one case liability is premised on the delegation of work to someone unable to perform the work safely, and in the other instance the contractor is able to perform the work safely, but for some reason fails to do so. Thus, the negligent hiring theory is based upon the failure to make a delegation by virtue of hiring someone *unable* to take the necessary precautions. Peculiar risk is based upon the negligence of the otherwise competent contractor to take necessary precautions.

This distinction is important because it bears directly on the degree of culpability of the hirer which distinguishes it from peculiar risk. In negligent hiring cases, both the owner and the contractor share fault which is independent of the other. Both have duties to the public to avoid risk of harm by virtue of their actions. The hirer violates this duty by hiring an independent contractor to perform work for its benefit which the contractor is not competent to perform safely. In effect, the hirer is at fault because there has been no delegation. The contractor is at fault because it undertook work without due care. On the other hand, in the case of peculiar risk, the owner is independently blameless. These distinctions lead to the inescapable conclusion that the two theories are separate, distinctive, and independent. Abrogation of one theory by *Privette* based upon public policy disfavoring vicarious liability does not mean the second theory is also annulled.

Tosco's "harbinger" argument rests on its premise that *Privette* has cast doubt over the reasoning of *Gettemy*, which was the first case to allow

employees of independent contractors to bring claims under Restatement section 411. *Gettemy* relied on *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708] to support its reasoning that negligent hiring claims may be asserted by employees of an independent contractor against the hirer. (*Gettemy* v. *Star House Movers, supra,* 225 Cal.App.2d at p. 643.) *Woolen* had similarly concluded the "others" to whom a hirer owed a legal duty under Restatement sections 413 and 416 (covering vicarious liability), included not just third party bystanders unconnected with the work but employees of an independent contractor as well. (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d at pp. 410-411.).) Since *Privette* overruled *Woolen* "and its progeny," Tosco argues the theoretical rationale for extending a cause of action for negligent hiring to employees of an independent contractor has been removed, and no cause of action on that theory survives in California. (*Privette, supra,* 5 Cal.4th at p. 702, fn. 4.)

We do not accept Tosco's syllogism that employees of an independent contractor are owed no duty under Restatement section 411. *Privette* over-ruled *Woolen* because *Woolen* allowed a cause of action against a property owner based on a theory of nondelegable duty, not because of its antecedent conclusion that any duty owed was also owed to the independent contractor's employees. There is nothing in *Privette* to indicate that a hirer of an independent contractor no longer owes *any* duty to the independent contractor's employees to avoid endangering them by the hirer's own negligent conduct.

We derive support for our view from *Smith* v. *ACandS, Inc.* (1994) 31 Cal.App.4th 77 [37 Cal.Rptr.2d 457], a case decided after *Privette.* In *Smith,* an injured employee of an independent asbestos insulation contractor was allowed to proceed on negligent hiring theory against the defendant hirer. The jury's verdict was based *both* on peculiar risk and negligent hiring causes of action. The *Smith* court reversed because under *Privette,* which was decided while the appeal was pending, the employer could not be held liable to employees of the independent contractor under the peculiar risk doctrine. However, in reversing the judgment, the *Smith* court directed that the question of the utility company's negligence in failing to hire "careful and competent insulators or to take other reasonable precautions" in light of the known dangers of asbestos was to be the subject of a new trial. (*Id.* at p. 97.) The relevance of *Smith* v. *ACandS, Inc.* here is its recognition that a separate claim for negligent hiring survives the legal denouement of peculiar risk if properly supported by evidence.

Therefore, we conclude that a cause of action for negligent hiring survives the eradication of peculiar risk by *Privette.* The claim was properly submitted to the jury for determination based on the factual record and instructions which are not materially challenged as inadequate by this appeal.

## C. *Liability for Negligent Exercise of Retained Control—Restatement Section 414*

Tosco does not contest the legal efficacy of Grahn's theory of liability premised on allegations that Tosco retained control over the details by which the insulation work was performed by Thorpe. Instead it contends the evidence was insufficient to support liability, and that the jury was improperly instructed on this theory.

Section 414 of the Restatement explains: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." The theory of liability embodied in section 414 of the Restatement has been adopted by California courts. (*Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 232-233 [282 P.2d 69]; *Holman* v. *State of California, supra,* 53 Cal.App.3d at pp. 331-332.)

Furthermore, the hirer may be held liable to the independent contractor's employee where the hirer retains sufficient control over the work of an independent contractor to be able to prevent or eliminate through the exercise of reasonable care the dangerous condition causing injury to the independent contractor's employee. (See, e.g., *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 106-107 [18 Cal.Rptr. 527, 368 P.2d 127]; *Morehouse* v. *Taubman Co.* (1970) 5 Cal.App.3d 548, 557 [85 Cal.Rptr. 308]; *Johnson* v. *Tosco Corp.* (1991) 1 Cal.App.4th 123, 137-140 [1 Cal.Rptr.2d 747].) This theory of negligent liability has been found to remain viable after *Privette.* (*Lopez* v. *University Partners, supra,* 54 Cal.App.4th at p. 1126.)

Conversely, a hirer who does not exercise the requisite degree of control over the details of an independent contractor's work has no duty for injuries arising out of the acts of the independent contractor. As was recognized in *Kuntz* v. *Del E. Webb Constr. Co., supra,* 57 Cal.2d at page 107, "[n]o cases have been found, . . . holding that the mere right to see that work is satisfactorily completed imposes upon the one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions." Broadly speaking, under *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785 [285 P.2d 902], the degree of control necessary for the creation of a legal duty must involve either the direct management of the means and methods of the independent contractor's activities or the provision of the specific equipment that caused the injury. (*Id.* at pp. 790-791.) Otherwise, the general rule applies that a principal who hires an

independent contractor is not liable to third parties injured through the contractor's negligence.

The reason for this distinction is obvious. In the circumstance where the hirer retains control of the details of the independent contractor's work, there effectively has been no delegation to provide for safety precautions. Thus, liability is not grounded on a public policy prohibiting a delegation of duties because of the peculiar nature of the work. Having retained control of the independent contractor's work, the hirer has a direct and nonimputed obligation to see that reasonable precautions are taken to eliminate or reduce the risk of harm to the employees of its independent contractors.

 Therefore, as a separate basis of liability, if Tosco retained sufficient control over the work to invoke Restatement section 414, it could be held responsible for the injury to Grahn resulting from its own negligent exercise of that control. Tosco's level of control was the most hotly contested factual issue at trial. This question is normally for the trier of fact. (See *Holman* v. *State of California, supra*, 53 Cal.App.3d at p. 335.)

Tosco argues that on the evidence produced at trial "control was not present, as a matter of law." If the only evidence Grahn produced was that Tosco's inspectors told Thorpe what Tosco wanted done and periodically checked the insulation tear-out and inspected the completed job, Tosco's argument would prevail. However, Grahn presented additional evidence that Tosco retained an active role in site safety, including reserving the authority to stop Thorpe's work in order to effectuate asbestos abatement at the jobsites. In addition, evidence was submitted that Tosco expressly retained responsibility for conducting industrial/hygiene monitoring at Thorpe's jobsites and issued permits to Thorpe listing the safety equipment Tosco required Thorpe's workers to wear. The permits never carried any asbestos warnings or restrictions, or required that the workers wear respirators. Tosco discounted the significance of this evidence, arguing, "So when we get down to it, we got Tosco asking Thorpe to do a job that they are experts at that they have done for years. [¶] Thorpe comes in, and the control on how the insulation is removed is not in Tosco at all. . . . [¶] The core of the work and the core of any potential exposure was always with Thorpe, and more particularly than Thorpe with the brick masons doing the work."

 A judgment will not be disturbed for lack of evidence if the evidence in support of the judgment is substantial, that is, enough to allow a reasonable jury to have reached the challenged result. (*College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894].) In reviewing this record, we find that substantial evidence

exists as to whether Tosco retained sufficient control over the safety aspects of the insulation tear-out to impose liability. Therefore, we will not overturn the jury's verdict based on insufficiency of the evidence as to this theory of liability.

Tosco next claims the instruction to the jury on this theory failed to embody the correct legal principles governing whether it exercised sufficient control over Thorpe's activities. The instruction, which was given over Tosco's objection, states: "An owner of premises who employs a contractor to perform work thereon, *but who remains in control of the premises where the work is being done*, owes to the employees of the contractor a duty to exercise ordinary care in the *management of such premises* in order to avoid exposing such employees to an unreasonable risk of harm." (Italics added.) Tosco argues, "the control instruction in this case was wrong because it allowed liability based on nothing more than a showing that Tosco retained ultimate control of its own property."

Tosco's contention is correct. The case law and the Restatement establish that the "control" necessary to give rise to a duty of care under Restatement section 414 is control exercised by the hirer over the methods of the work or the manner in which the contractor's employees perform the operative details of their tasks, and not simply general control over the premises.

The court in *Holman* v. *State of California, supra,* 53 Cal.App.3d 317, stated the rule as follows: "The existence of a duty of care by an employer of an independent contractor towards his contractor's employees and others on the job requires an additional element: the retention of a certain degree of control by the employer *over that part of the work which caused the injury.* [Citations.]" (*Id.* at p. 333, italics added.) Comment c to section 414 of the Restatement limits the amorphous concept of control: "It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that *the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*" (Italics added.)

The fundamental flaw in the challenged instruction is its focus on the condition of the owner's premises, not the contractor's work. There is a palpable difference between the two. Tosco provides an illustrative example: "Assume that Grahn, while coming to work one day at Tosco's refinery, had

fallen into an unmarked ditch dug by Tosco. The injury would be caused by a condition of the premises. Obviously, Tosco's control over its premises would be a proper consideration. Assume, however, that Grahn himself dug the ditch and fell into it. In that case, the injury would be caused by the work done by Grahn. The question in that circumstance must be whether Tosco controlled the details of the work, not merely the premises."

Compounding this instructional error, the trial court gave another instruction attempting to clarify the requisite degree of control necessary to impose liability on Tosco. The instruction stated: "However, the general supervisory right to control the progress of work so as to insure *its satisfactory* completion with the terms of the contract does *not necessarily* make an owner liable for an independent contractor's negligent acts in performing the work." The operative term in this instruction is "not necessarily." Thus, under the instructions, Tosco's retention of control over the premises and general supervisory control over the work *might* expose it to liability.

We are compelled to conclude that the manner in which "control" was defined by the instructions was insufficient to provide meaningful guidance to the jury in deciding this critical question. (See *Johnson* v. *Tosco Corp., supra*, 1 Cal.App.4th at pp. 139-140 [instruction conferring duty based on owner's "supervision over a project" prejudicially misleading].) The thrust of the jury instructions properly supporting this otherwise valid theory of liability under the facts of this case should have been on the control by the hirer of the methods or details of the work and not simply the hirer's inherent right otherwise to control the premises. We also conclude this instructional error was prejudicial. Our reasoning follows our discussion of Grahn's third cause of action against Tosco.

D. *Liability for Dangerous Condition on the Premises—Restatement Section 343*

 Tosco next claims the jury was improperly instructed on negligent use or maintenance of Tosco's premises. Grahn relied on Restatement section 343 requiring occupiers of land to exercise reasonable care in maintaining their premises, which is well established in California. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Restatement section 343 provides: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he [¶] (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and [¶] (b) should expect that they will not discover or realize the danger, or will fail to protect

themselves against it. . . ." Grahn argued below that Tosco was aware that the premises where Grahn was working was contaminated with asbestos, yet it failed to warn of such hazards or suggest other proper and safer methods of removal.

The instruction given the jury over Tosco's objection essentially mirrored the general rule that an independent contractor's employee who goes on the hirer/occupant's premises is an invitee to whom the hirer may be liable for injury caused by an unsafe condition of the premises. (See *Gettemy* v. *Star House Movers*, *supra*, 225 Cal.App.2d at p. 645.) The instruction states: "The owner of premises is under a duty to exercise ordinary care in the use and maintenance of such premises in order to avoid exposing persons to an unreasonable risk of harm. Such duty exists whether the risk of harm is caused by the natural condition of such premises or by an artificial condition created on such premises. Such duty is owed to persons on the premises and to persons off the premises. A failure to fulfill this duty is negligence." The instruction goes on to state: "You shall determine whether a person under the same or similar circumstances as the defendant Tosco Corporation should have foreseen that the plaintiff Gerald Grahn would be exposed to an unreasonable risk of harm. [¶] If you so find, you are instructed that the defendant Tosco Corporation owed plaintiff Gerald Grahn such a duty of care and you should determine if the defendant exercised such care, considering all the surrounding circumstances shown by the evidence."

Tosco argues that in the context of the facts of this case, and in light of *Privette*, the language of this instruction was prejudicially misleading. It failed to distinguish between unsafe conditions either created by the independent contractor during the course of the work or which are to be remedied as part of the work to be performed by the independent contractor, on the one hand, and unsafe conditions inhering in the premises where the work is to be done, on the other hand. Tosco argues this distinction is critical because the dangerous condition was a hazard attendant to the very work Thorpe was hired to perform and was created by Thorpe after Grahn arrived. Tosco claims that honoring this distinction is the only way to harmonize *Privette*'s limitation on the peculiar risk doctrine and premises liability law.

In making this argument, Tosco points out that asbestos materials do not pose a health risk when they are intact and undisturbed. Consequently, the mere presence of undisturbed asbestos in Tosco's refinery is not a "dangerous condition" of the property. Because asbestos-containing materials are dangerous only if damaged or disturbed, the activity rendering the asbestos potentially dangerous was the very work Thorpe was employed to complete. Tosco argues that under these circumstances, where the contracted work

remains under the independent contractor's exclusive control, no duty devolves upon the premises owner to see that the work is done safely.

 California law generally supports Tosco's argument. While a hirer has a duty to maintain its premises in a reasonably safe condition for employees of an independent contractor, not every dangerous condition on the hirer's premises subjects the hirer to liability for physical harm to the independent contractor's employees. Where the operative details of the work are not under the control of the hirer and the dangerous condition causing injury is either created by the independent contractor or is, at least in part, the object of the work of the independent contractor, the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer who may also generally control the premises. In such cases, the hirer is entitled to assume that the independent contractor will perform its responsibilities in a safe manner, taking proper care and precautions to assure the safety of its employees. (See, e.g., *Lopez v. University Partners, supra*, 54 Cal.App.4th at p. 1129, fn. 7 [no cause of action for premises liability when dangerous condition that injured plaintiff, an independent contractor's employee, did not exist until the independent contractor itself created it by negligently performing its excavation contract].) On the other hand, as we have discussed in the previous section of this opinion, if a hirer of an independent contractor retains control over the details of the independent contractor's work, the hirer assumes an independent duty of reasonable care to the independent contractor's employee even if the employee is injured doing the very work the independent contractor was hired to perform.

 Interpretative guidance, illustrating these principles, is provided by the following cases. The plaintiff in *Abrons* v. *Richfield Oil Corp.* (1961) 190 Cal.App.2d 640 [12 Cal.Rptr. 271] was the employee of an independent contractor retained by the defendant refinery to do construction work. His employer directed him to dig a trench on a part of the refinery premises generally under the control of the refinery owner. (*Id.* at pp. 643-644, fn. 1.) The ground chosen for the trench was oil-saturated, presumably as a result of long-term use of the land by the owner. As a result of the oil-saturated condition of the land coupled with the failure of the contractor to use appropriate shoring, the trench collapsed, injuring the plaintiff. Observing that the soil was not "dangerous" until the plaintiff's employer began to dig a trench without appropriate structural safeguards, the Court of Appeal found the premises owner was not liable for the plaintiff's injuries as a matter of law because the premises owner did not control the work of plaintiff and his employer. (*Id.* at pp. 646-647.)

*Dauer* v. *Aerojet General Corp.* (1964) 224 Cal.App.2d 175 [36 Cal.Rptr. 356] also involved an employee of the independent contractor, Zelinsky,

hired to paint the interior of fuel storage tanks at Aerojet's property. The employee was killed when the tank he was painting exploded as a result of the highly combustible paint he was using. (*Id.* at p. 177.) No fan for the circulation of air was used during the painting nor was explosion-proof lighting used. (*Id.* at p. 179.) Among other theories of liability, the deceased employee's heirs argued that the premises were dangerous when turned over to Zelinsky. (*Id.* at pp. 181-182.) The court rejected this argument: "[T]here was nothing hazardous about the tank when it was turned over to Zelinsky --the hazard only occurred when the work commenced, especially without proper precautions being taken. . . . [¶] . . . It was only after Zelinsky began to perform its contract that the tank became an unsafe place to work, and the tank became unsafe only because of the negligent manner in which the work was performed." (*Ibid.*)

By contrast is *Austin* v. *Riverside Portland Cement Co., supra,* 44 Cal.2d 225. The plaintiffs there were employed by an independent contractor to repair a rock crusher in the defendant's cement plant. The assignment was a "rush" job which required using a crane at night in an area of poor visibility with exposed electrical wires. The court made special mention that throughout the independent contractor's work defendant "retained control of its premises and plant, although not of [the independent contractor's] employees, equipment and operations . . . ." (*Id.* at p. 229.) The independent contractor had no authority to deenergize the overhead electrical wires because shutting down the power would stop the work production in defendant's plant. The plaintiffs asserted that defendant had been alerted to the danger posed by the electrical wires and had shut down the electrical power on previous occasions. (*Id.* at p. 230.) The plaintiffs received electrical burns when the crane on which they were working contacted the overhead electrical wires.

In upholding the jury's finding that defendant was negligent, the *Austin* court invoked the common law obligation of a landowner to furnish a business invitee, such as an independent contractor's employee, with a reasonably safe place in which to work or, if there is potential danger from conditions that are not obvious, to give the employee reasonable warning of such danger. (44 Cal.2d at p. 233.) The court reasoned: "The jury could conclude that, knowing as defendant did, that [the independent contractor's] cranes operated in the vicinity of the power line, unless the power was cut off a danger existed; that work called for night operation and the lighting was such that the wires were not visible; [and] that it should have anticipated that the boom of the crane might come in contact with the wires permitting the electricity to be conducted to a place where it would cause injury . . . ." (*Ibid.*)

Similarly, in *Markley* v. *Beagle* (1967) 66 Cal.2d 951 [59 Cal.Rptr. 809, 429 P.2d 129], the employee of an independent contractor was on his way to the roof of a building to repair a ventilation fan. (*Id.* at p. 955.) He was injured when he fell through a mezzanine railing inside the building which had been altered physically, leaving it in a weakened condition. Our Supreme Court affirmed a judgment against the premises owner, explaining: "Plaintiff was an employee of an independent contractor engaged by the tenant who operated the restaurant to service the ventilating system. He was therefore a business invitee of the owners to whom they owed a duty of reasonable care. They knew or should have known that he would use the mezzanine to get to the fan on the roof, and the jury could reasonably conclude that . . . the owners were negligent in failing to discover the dangerous condition of the railing and to either correct it or adequately warn plaintiff of it." (*Id.* at pp. 955-956.)

In *Austin* and *Markley*, the plaintiffs were injured, not because of dangers inherent in the work they were hired to perform, but rather from conditions entirely extraneous to the performance of their work and indisputably within the control of the premises owner/hirer. Without question, *Austin* and *Markley* represent general premises liability cases, where the instruction given to the jury in this case correctly states the landowner's duty. By parity of reasoning, we would uphold the giving of the challenged instruction if, for example, Grahn had been injured because he slipped on a puddle of water on Tosco's front entrance or because he was run over on Tosco's property by a malfunctioning forklift driven by one of Tosco's employees. These would not be risks created by Thorpe and would be wholly outside the scope of its work assignment. Conversely, *Abrons* and *Dauer* represent cases where the landowner was not liable for injuries caused by a dangerous condition on the premises created by the contractor's work, and where the landowner did not control the independent contractor's activities. *Abrons* and *Dauer* are more analogous to the instant case than are *Austin or Markley*.

After reviewing these authorities, we conclude the court erred in allowing the jury to rely on general premises liability principles to establish Tosco's standard of care with respect to the work Thorpe had contracted to perform. When examined closely, the instruction has the potential of assigning liability to Tosco for the harm caused by conditions Thorpe created during its execution of the contemplated work, or caused by a dangerous condition which was the very subject of the work to be performed. Imposing general premises liability for dangerous conditions the independent contractor creates or which necessarily forms a part of the work delegated to the contractor clearly conflicts with *Privette*. The instruction's imposition of a duty based on mere foreseeability that Grahn "would be exposed to an unreasonable risk

of harm," is tantamount to assigning vicarious liability to Tosco for Thorpe's negligence, a claim which is precluded by *Privette*. Thus, it prevents the very delegation of duty for employee safety *Privette* strived to restore by limiting application of the peculiar risk doctrine.

For these reasons, we conclude that in the absence of the hirer's retention of control of the methods or operative details of the independent contractor's work, the hirer cannot be held liable to the independent contractor's employee as a result of the dangerous condition on the hirer's property if: 1) a preexisting dangerous condition was known or reasonably discoverable by the contractor, and the condition is the subject of at least a part of the work contemplated by the independent contractor; or 2) the contractor creates the dangerous condition on the hirer's property and the hirer does not increase the risk of harm by its own affirmative conduct. Because the instruction given to the jury allowed it to impose liability on Tosco on the basis of findings outside the parameters of these defined circumstances, it failed to define the proper legal duty owed by Tosco to Grahn, and was erroneous.[8]

## E. *Effect of Instructional Error*

We find that instructional errors on two of Grahn's causes of action preclude us from affirming the judgment on the jury's finding of general negligence. The special verdict presented the jury with a single question, "Was [d]efendant Tosco negligent?" Since the jury's affirmative

---

[8]We note the recent publication of *Zeiger* v. *State of California* (1997) 58 Cal.App.4th 532 [68 Cal.Rptr.2d 39], review granted December 17, 1997 (S065502). *Zeiger* involved personal injuries to an employee of an independent contractor who fell from a defective scaffolding erected by his employer. The accident occurred on the premises of the State of California. In attempting to defeat summary judgment for the state, the injured employee pointed to various portions of the depositional evidence to show plaintiff as well as others had advised the project manager for the state that the scaffolding was dangerous. The state's project manager failed to act on this information; instead, he stated that safety in the area where the independent contractor was working was none of his concern. Viewing this evidence and the evidence relating to the other defendants in the light most favorable to plaintiff, the court reversed the trial court's grant of summary judgment and allowed the case to proceed to trial against all the defendants.

We wholeheartedly concur with *Zeiger*'s overall conclusion "that neither the language nor the rationale of *Privette* or its progeny obliterates any of the long established theories of liability of an owner or general contractor for his independent negligence." (58 Cal.App.4th at p. 547.) However, we depart from the reasoning of *Zeiger* to the extent it can be read to impose liability on the state, as owner of the premises upon which the accident occurred, based solely on its knowledge, through its agents, of the unstable condition of the scaffolding. (*Ibid.*) The scaffolding did not exist on the state's premises before the work commenced but was rather a temporary structure created and used entirely by the independent contractor to perform its work. The danger it posed was open and obvious to the contractor. As far as we can discern from *Zeiger*'s description of the evidence, the state assumed no control over the scaffolding with respect to its safety. Under these circumstances, we find no basis for imposing liability on the state even if it had knowledge of the dangerous condition.

answer to this question might have been based on the erroneous instructions on negligent exercise of control of the premises or the erroneous instructions on negligent use and maintenance of the premises, the errors were "likely to mislead the jury and thus to become a factor in its verdict," requiring reversal. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]; *Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 591 [156 Cal.Rptr. 198, 595 P.2d 975].) After examining "the evidence, the arguments, and other factors to determine whether it is *reasonably probable* that instructions allowing application of an erroneous theory *actually* misled the jury [citations]," we are convinced the erroneous instructions are prejudicial. (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 581, fn. 11 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

Having concluded that the verdict rendered by the jury in this matter must be reversed, we need not address the issue of whether the jury's $100,000 award for loss of consortium was supported by the evidence. Likewise, there is no need to reach the merits of whether Grahn's counsel's closing argument prejudicially misled the jury with regard to apportionment of the damages. Finally, while we recognize the importance of the Proposition 51 issues (Civ. Code, § 1431.2), any opinion we would render thereon would be purely advisory as this matter will have to be retried. However, the parties' attention is directed to the recent Supreme Court decision in *Buttram* v. *Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520 [66 Cal.Rptr.2d 438, 941 P.2d 71] which addresses the apportionment issue.

## IV.

### DISPOSITION

Based on the foregoing, the judgment is reversed. Costs are awarded to Tosco as the prevailing party. (Cal. Rules of Court, rule 26.)

Haerle, Acting P. J., and Lambden, J., concurred.

A petition for a rehearing was denied December 4, 1997, and respondents' petition for review by the Supreme Court was denied February 3, 1998.