100 Cal.Rptr.2d 871 (2000)
84 Cal.App.4th 442
John MINSTER, Plaintiff and Appellant,
v.
CONTADINA FOODS, INC., Defendant and Respondent.
No. A089857.
Court of Appeal, First District, Division Three.
October 27, 2000.
As Modified November 7, 2000.
Review Granted January 17, 2001.
*872 Brayton, Purcell, Curtis & Geagan, Alan R. Brayton, Gilbert L. Purcell, James Geagan, Novato, Joanne E.K. Larson, San Francisco, and Lloyd F. LeRoy, Counsel for plaintiff and appellant.
Scadden, Hamilton & Ryan, James G. Scadden, Vincent C. Milani, and Robert J. Ryan, San Francisco, Counsel for defendant and respondent.
*873 WALKER, J.
In this opinion we consider whether, under Privette v. Superior Court (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (Privette ) and Toland v. Sunland Housing Group, Inc. (1998) 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504 (Toland ), an employee of an independent contractor may pursue a claim for negligent hiring against a hirer of the independent contractor. For the same policy reasons expressed in Privette and Toland, we hold that the employee may not pursue such a claim because a hirer's duty to exercise reasonable care in employing a competent and careful independent contractor with the skills necessary to perform the work without creating an unreasonable risk of injury to others does not extend to an employee of the independent contractor.
In the matter before us, John Minster, an employee of an independent contractor allegedly hired by respondent Contadina Foods, Inc. (Contadina),[1] filed a complaint seeking damages from numerous defendants for asbestos-related injuries. As against Contadina, he alleged he had been exposed to asbestos while doing insulation work as an employee of Plant Asbestos (Plant) at the Contadina Cannery in 1965. Minster sought to hold Contadina liable for his injuries under a premises owner/contractor liability theory. Contadina moved for summary judgment or summary adjudication of issues on two grounds.[2] First, it asserted that it did not retain sufficient control over the work being performed by Minster, an employee of an independent contractor, to create a duty upon it to exercise reasonable care to prevent the claimed injury. Second, it contended Minster possessed no evidence to support his claim that it hired Plant as an independent contractor or that, if it did hire Plant, it did so negligently. The trial court concurred and entered judgment for Contadina on the ground Minster had failed to present evidence sufficient to create any triable issue of material fact.
With regard to the issue of Contadina's control over the work performed by Minster's employer, we agree with the trial court that no evidence was presented to create a triable issue of material fact. We also agree that judgment was proper for Contadina on Minster's claim for negligent hiring, but for a different reason than that stated by the trial court. We hold that under Privette and Toland, an employee of an independent contractor may not pursue a claim for negligent hiring against a hirer of the independent contractor because a hirer's duty to exercise reasonable care in employing a competent and careful independent contractor with the skills necessary to perform the work without creating an unreasonable risk of injury to others does not extend to an employee of the independent contractor.[3]

I. Facts and Procedural History
In support of its motion for summary judgment, respondent relied on eight factual statements set forth in its separate statement of undisputed facts. In supporting these factual statements, Contadina relied solely on attachments to Minster's complaint, his answers to interrogatories, and excerpts from his deposition testimony. According to appellant's interrogatory responses, in 1965 he was employed as a journeyman insulator by Plant, an insulation subcontractor. For two to three weeks in 1965, *874 appellant, employed by Plant, worked on a boiler plant project at a Contadina facility in Riverbank, California. At his deposition, appellant testified that with the exception of a mud box supplied by Plant, he used all of his own tools in performing his work for Plant at Contadina and that all of the materials he used on the job were supplied by Plant. Appellant also testified that he received no job instructions from Contadina, and had no contact with any of its employees while working there. When asked, appellant responded that he did not know who the general contractor on the boiler plant project was, and did not know who employed any of the other contractors or tradesmen at the jobsite.
In opposing Contadina's motion, Minster filed his declaration stating that during the two to three weeks he worked at the Contadina facility there were Contadina employees present who periodically checked on the work performed by Plant and by the other subcontractors on the job, and directed them where to do their work. He further stated that in his more than 30 years working in commercial and industrial construction, it was his experience that the owner of the premises controlled the safety on the premises, such that if any of its employees observed an unsafe work practice or condition, the premises owner had the ability and authority to stop work and insist on corrective measures. He could not recall that this had ever been done at Contadina, despite the fact that he and his fellow insulators were regularly generating visible airborne dust. Finally, Minster declared as follows: "At the conclusion of each day, it was our general practice to clean the area in which we worked at the Contadina boiler plant. Although Plant Asbestos provided the insulation materials and some of our tools (the remainder of the tools were generally owned by the insulator), we were never provided, to my recollection, with push brooms, dust pans, and/or any other implements so as to perform clean-up of insulation debris and dust at any worksite during the period in question. I do not recall ever being provided push brooms, dust pans, and/or any other cleaning implements by my employer while I worked at Contadina Foods in 1965, and generally recall that Contadina Foods made available said items so that I and my crew could clean the boiler plant at the conclusion of each day. The clean up of the debris from our insulation work resulted in the generation of airborne asbestos dust. I specifically recall the floor around our work at Contadina would be covered with a white dust the following morning. Upon completing our work at Contadina, it is my recollection that we used water sprayed from hoses provided by Contadina Foods to clean up our insulation debris."
At the hearing on the motion for summary judgment, the trial court informed the parties that pursuant to D'Amico v. Board of Medical Examiners, it would disregard the evidence presented by Minster in his declaration.[4] After oral argument, the court granted Contadina's motion for summary judgment. It found that Contadina had met its burden of showing that it had not directed or controlled Minster's work nor supplied the tools or materials that caused his injuries, and that it had not been negligent in hiring its independent contractors. The trial court further held that Minster had failed to produce competent evidence to create any triable issue of material fact on these points. Minster filed this timely appeal.

*875 II. Standard of Review
In reviewing a trial court's order granting summary judgment, we are limited to the facts shown in the supporting and opposing affidavits and declarations, as well as those in admissions, answers to interrogatories, depositions, and matters of which judicial notice may be taken. Because of strong public policy favoring a trial on the merits, we are bound by the same principles governing the trial court's determination on summary judgment. We therefore strictly construe the moving party's papers and liberally construe the opposing party's papers. All doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (AARTS Productions, Inc. v. Crocker National Bank (1986) 179 Cal. App.3d 1061, 1064-1065, 225 Cal.Rptr. 203; Code Civ. Proc., § 437c, subd. (b).) While we review a summary judgment ruling under the same general principles applicable to the trial court, we do so de novo, independently determining whether, under the facts as presented, there exists a triable issue of material fact. (Buss v. Superior Court (1997) 16 Cal.4th 35, 60, 65 Cal. Rptr.2d 366, 939 P.2d 766; Saldana v. Globe-Weis Systems Co. (1991) 233 Cal. App.3d 1505, 1511-1515, 285 Cal.Rptr. 385.) Upon our independent review, we may affirm a summary judgment for reasons different from the trial court's reasons for granting it. (Bunnell v. Department of Corrections (1998) 64 Cal.App.4th 1360,1367, 76 Cal.Rptr.2d 58.)
In moving for summary judgment, the defendant has the initial burden of showing that, as to each cause of action alleged in the complaint, the plaintiff cannot establish one or more of the elements of the cause of action. (Code Civ. Proc., § 437c, subd. (o).) If such a showing is made, the burden shifts to the plaintiff, who must respond by presenting admissible evidence in the form of specific facts that create a triable issue of material fact as to the attacked element. (Ibid.) Summary judgment is warranted if no triable issue is established. (Id., subd. (c).)

III. Discussion

A. Negligent Hiring

1) Sufficiency of the Evidence on Summary Judgment

Minster contends that Contadina was liable for injuries he sustained from exposure to asbestos during the two to three weeks he worked at Contadina's facility in Riverbank, California, because Contadina had negligently hired Plant to do work it was not competent to complete safely. This theory of liability, often referred as a claim for negligent hiring, is the subject of section 411 of the Restatement Second of Torts,[5] which states: "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." Comment (a) to section 411 defines "competent and careful contractor" as "a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary." In addition, comment (c) to Restatement section 411 lists three important factors to be considered in determining the amount of care a hirer should exercise in selecting an independent contractor: "(1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done whether the work lies within the competence of the average man or is work which *876 can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other."
Thus, to establish his claim at trial, Minster would have been required to prove that Contadina did, in fact, hire Plant, and that it was negligent in choosing Plant for the job. (Grahn v. Tosco Corp. (1997) 58 Cal.App.4th 1373, 1390-1392, 68 Cal. Rptr.2d 806.) Of course, to establish negligence, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages. (6) Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, pp. 60-61.) Accordingly, on summary judgment, Contadina was required to present evidence that Minster could not establish an element of the claim, either by showing that it did not hire Plant, or by showing that it was not negligent in choosing Plant. As we will address in more detail below, a question that is crucial to a resolution of the issues on appeal is whether Contadina's duty to exercise care in selecting a "competent and careful contractor" extended to Minster under the circumstances presented here. First, however, we consider the evidence submitted on the question of whether Contadina was the entity responsible for hiring Plant.

a) Did Contadina Meet its Burden of Negating the "Hiring" Component of Minster's Negligent Hiring Claim?
As to the hiring component, Contadina relied on Minster's deposition testimony that he did not know who hired Plant to do the work at Contadina. Thus, based upon Minster's testimony, alone, Contadina asserted that Minster had no evidence to establish a required element of his claim of negligent hiring. On summary judgment, a defendant's burden may be met by showing that "one or more elements of the [plaintiffs] cause of action ... cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that "a triable issue of one or more material facts exists as to that cause of action...." (Ibid.) A plaintiff, in meeting the shifted burden, "shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action." (Ibid.) As explained in Union Bank v. Superior Court (1995) 31 Cal.App.4th 573, 37 Cal.Rptr.2d 653, "a moving defendant may rely on factually devoid discovery responses to shift the burden of proof pursuant to section 437c, subdivision (d)(2). Once the burden shifts as a result of the factually devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact." (Id. at p. 590, 37 Cal. Rptr.2d 653; accord, Hunter v. Pacific Mechanical Corp. (1995) 37 Cal.App.4th 1282, 1287, 44 Cal.Rptr.2d 335 (Hunter ).) If plaintiff fails to make that showing, summary judgment "shall be granted." (Code Civ. Proc., § 437c, subd. (c).)
A number of cases have considered the propriety of granting summary judgment based upon a defendant's reliance on plaintiffs factually devoid discovery responses. These cases have fallen into two camps. The first category of cases are those in which the court decided that the plaintiff should have been in possession of facts to directly or inferentially support his or her claim. The failure to supply that information in discovery responses suggested that the plaintiff could not prove the claim, thereby shifting the burden to plaintiff to present opposing evidence sufficient to create a triable issue of material fact. (See, e.g., Hunter, supra, 37 Cal.App.4th 1282, 44 Cal.Rptr.2d 335; Chaknova v. Wilbur-Ellis Co. (1999) 69 Cal.App.4th 962, 81 Cal.Rptr.2d 871.) The second category of cases are those in which the court held that the plaintiff could not have been expected to possess the information sought by the defendant's propounded discovery or deposition questions, such that the factually devoid responses did not create an inference that plaintiff could not establish *877 an element of his or her claim. Thus, the moving party had an affirmative burden of producing admissible evidence to negate the element of the cause of action. By failing to do so, the burden never shifted to the plaintiff to present evidence on the challenged element. (See, e.g., Villa v. McFerren (1995) 35 Cal.App.4th 733, 41 Cal.Rptr.2d 719; Hagen v. Hickenbottom (1995) 41 Cal.App.4th 168, 48 Cal.Rptr.2d 197; see also Scheiding v. Dinividdie Construction Co. (1999) 69 Cal.App.4th 64, 83, 81 Cal.Rptr.2d 360 [explaining the split in the cases].)
In Hunter, supra, summary judgment was granted in favor of defendant Pacific Mechanical Corp. (PMC), a contractor alleged to have "supplied, installed, and/or removed asbestos-containing products at the same jobsites" where the plaintiff was working, thereby exposing him to asbestos because of his close working proximity to PMC employees. PMC moved for summary judgment, relying primarily on the plaintiffs deposition testimony that he was unfamiliar with PMC and could not remember ever working in the same area with PMC employees. In opposing the motion, the plaintiff provided evidence to show that there was "an overlap in work sites during various time frames, suggesting that it was possible that he could have been present at the same jobsite as PMC employees." (37 Cal.App.4th at pp. 1284-1285, 44 Cal.Rptr.2d 335.) The trial court granted summary judgment because plaintiffs own deposition testimony showed that he could not establish an evidentiary basis for PMC's liability and plaintiff submitted no other facts to rebut that showing.
On appeal the court affirmed, explaining that "PMC was not required to come forward with evidence of its own to affirmatively demonstrate that Hunter could not have been exposed to asbestos as a result of PMC's activities. Rather, it was enough to show through factually vague discovery responses that [plaintiff] lacked any significant probative evidence on the critical element of causation. In other words, PMC could effectively show that the element of causation `cannot be established' by pointing to an absence of evidence to support this element. ( [Code Civ. Proc.,] § 437c, subd. (o)(2).)" (Hunter, supra, 37 Cal. App.4th at p. 1288, 44 Cal.Rptr.2d 335, italics in original.) Upon this showing, the burden shifted to the plaintiff to show the existence of a triable issue of material fact as to causation. (Ibid.) Because the plaintiff in Hunter failed to produce such evidence, and made only an insufficient showing that PMC was "potentially present" at plaintiffs work site, he did not create a genuine factual dispute, and summary judgment was proper. (Id. at pp. 1289-1290, 44 Cal.Rptr.2d 335.)
Similarly, in Chaknova, the plaintiffs sought to hold Wilbur-Ellis, the successor to asbestos broker L.H. Butcher, liable for asbestos related injuries. Wilbur-Ellis moved for summary judgment, relying on plaintiff Chaknova's specific deposition testimony that he had never heard of L.H. Butcher and did not recall using the products distributed by L.H. Butcher during his career, and on responses to contention interrogatories in which plaintiffs failed to name L.H. Butcher. (Chaknova v. Wilbur-Ellis Co., supra, 69 Cal.App.4th at p. 976, 81 Cal.Rptr.2d 871.) Plaintiffs claimed that the defendant had failed to meet its burden of proof on the element of causation, but also submitted general evidence that they claimed supported an inference that Chaknova might have been exposed to products brokered by L.H. Butcher. This Division affirmed the trial court's entry of summary judgment, holding that the plaintiffs' factually devoid responses to specific deposition questions and interrogatories showed that they had no facts to support their claim. (Id. at p. 977, 81 Cal.Rptr.2d 871.) We noted that "Chaknova does have personal knowledge of his working environments since the 1940's, and provided no evidence to implicate respondent in his asbestos exposure." (Id. at pp. 975-976, fn. 12, 81 Cal.Rptr.2d 871.)
In Villa, the defendants sought summary judgment on plaintiffs claim of conspiracy *878 by relying on the plaintiffs factually devoid deposition responses. The court held that the defendant's showing was inadequate to shift the burden of proof on summary judgment, because the plaintiff could not have been expected to have knowledge of the defendant's allegedly conspiratorial conversations, a matter particularly within the defendant's own knowledge. (Villa v. McFerren, supra, 35 Cal. App.4th at p. 749, 41 Cal.Rptr.2d 719.) "When a party represented by counsel admits unawareness of communications which he or she would not have been present to observe, such, to paraphrase the words of [Code of Civil Procedure] section 437c, former subdivision (n)(2), does not prove a conspiracy cause of action has no merit and that one or more elements of the claim cannot be established." (Villa v. McFerren, supra, at p. 749, 41 Cal.Rptr.2d 719.)
In Hagen, the plaintiffs brought an action to set aside a trust giving almost all the decedent's property to the defendant, on the theory that defendant had exercised undue influence over the decedent. (Hagen v. Hickenbottom, supra, 41 Cal. App.4th at p. 172, 48 Cal.Rptr.2d 197.) Defendant moved for summary judgment, relying on factually devoid discovery responses to argue that the plaintiffs could not prove their claim of undue influence. (Id. at pp. 187-188, 48 Cal.Rptr.2d 197.) The court held the discovery responses did not operate to shift the burden of proof on summary judgment to the plaintiffs because they could not have had personal knowledge of alleged undue influence exerted by the defendant over the decedent. "Any arguable inability the individual plaintiffs might have experienced, at deposition, to provide direct evidence of undue influence would have been explicable, here as in Villa, inasmuch as the plaintiffs almost certainly would not have been present. In this light it is notable, given the probability that Hickenbottom is the only surviving percipient witness to much of what she did or did not do to influence the decedent's estate-planning decisions, that Hickenbottom submitted no declaration of her own. The difficulties of proof of undue influence in circumstances such as these are taken into account in the rule that certain foundational facts will activate a presumption of undue influence which, at trial, would operate to shift the burden of proof to the proponent of the trust or will." (Id. at p. 187, 48 Cal.Rptr.2d 197, italics deleted.)
We hold that, as in Villa and Hagen, respondent did not successfully shift the burden on summary judgment by relying on appellant's deposition testimony that he did not know the identity of the general contractor at the Contadina site. Although, as in Hunter and Chaknova, Minster would have been expected to have personal knowledge of who was physically present at the job site with him, there is no reason to expect that he would have had personal knowledge of the contractual relationships between his employer and anyone else. As did the court in Hagen, we find it significant that Contadina presented no affirmative evidence of its own to show that it was not the general contractor. Had it done so, the burden would have shifted to Minster to establish otherwise. By merely relying on Minster's deposition testimony, Contadina failed to create an inference that it did not hire Plant.

b) Did Contadina Meet its Burden of Negating the "Negligence" Component of Minster's Negligent Hiring Claim?
Under Restatement section 411, a third party seeking to hold a hirer liable for negligent hiring would be required to prove that the hirer negligently employed an independent contractor that was not sufficiently skilled to perform the job for which it was hired without creating an unreasonable risk of injury to others. As with any claim of negligence, an employee of an independent contractor seeking damages for negligent hiring would be required to establish the four elements of negligence: (1) a duty to exercise reasonable care; (2) a breach of that duty; (3) *879 damages incurred; and (4) legal causation. (6 Witkin, Summary of Cal. Law, supra, Torts, § 732, pp. 60-61; Toland, supra, 18 Cal.4th at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504.) Accordingly, to successfully obtain summary judgment on the claim, the hirer would be required to show that the employee could not establish one or more of the elements of his claim.
In moving for summary judgment, Contadina sought to negate the "negligence" portion of Minster's negligent hiring cause of action by showing that Minster possessed no evidence Plant was incompetent to perform the contracted-for insulation work. Under the Restatement, however, Plant's competence to perform insulation work was irrelevant to question of its ability to do the work "without creating unreasonable risk of injury to others." Nonetheless, we consider the evidence presented to the trial court on the issue.
First, however, we note that in its separate statement of undisputed material facts in support of its summary judgment motion, Contadina made no reference to any evidence to support its assertion that Minster could not prove Plant's incompetence to perform the insulation work. In arguing the motion to the trial court, Contadina nonetheless erroneously relied on excerpts from Minster's deposition that were contained within the materials submitted in support of summary judgment, but not referred to in the separate statement of material facts. Minster contends the trial court should not have considered this evidence. We agree.
It is well settled that facts set out in points and authorities or in supporting evidence are not sufficient to satisfy the requirement in Code of Civil Procedure section 437c that all material facts be set forth in a separate statement. (North Coast Business Park v. Nielsen Construction Co. (1993) 17 Cal.App.4th 22, 30-31, 21 Cal.Rptr.2d 104.) "`[A]ll material facts must be set forth in the separate statement. "This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, it does not exist."' [Citation.]" (Ibid., italics in original.) Thus, the trial court should not have considered the deposition excerpts in reaching its decision to grant summary judgment. Nor, because we review the motion de novo, should we. Because Contadina provided no facts to defeat the negligence component of Minster's negligent hiring claim, summary adjudication of the claim was not warranted.
In any event the facts relied on by Contadina did not serve to establish Plant's ability to safely perform the contracted-for insulation work. Contadina relied on the following deposition testimony from Minster: "Q. Mr. Minster, do you believe that Plant was qualified to do the insulation work at Contadina? [¶] ... [¶] [A.] They were in the business before I was born.... Q. Do you believe they were competent contractors at the time they were performing work at Contadina?" "[A.] Somebody did. They had a lot of work." "Q. Do you have any reason to believe that Plant was not qualified or competent to perform insulation work at Contadina? [¶] ... [¶] [A.] I have no reason to believe they weren't qualified."
We hold that these responses did not satisfy Contadina's burden of showing that Minster could not establish the negligence component of his claim. The deposition questions only sought to elicit testimony regarding Plant's competence to perform the work called for in the contract; they did nothing to establish its ability to "do the work which [it was] employed to do without creating unreasonable risk of injury to others," under comment (a) of the Restatement. Furthermore, the first two deposition answers were nonresponsive and did not even serve to establish Plant's competency or qualifications to perform the contracted for work. Similarly, the third answer reflected Minster's personal belief regarding Plant's qualifications without any showing that, even if relevant to the cause of action, Minster was qualified to evaluate Plant's competence to safely perform the job it was hired to perform.
*880 Thus, because the evidence relied upon by Contadina concerned only Plant's competence to perform insulation work and did not touch upon its ability to provide for its employees' safety while performing the work, we hold that the trial court erred in granting summary adjudication of the issue on the ground asserted by Contadina. Nonetheless, we will affirm the granting of adjudication of this cause of action because we conclude that, after Privette and Toland, a claim for negligent hiring brought by an employee of an independent contractor against a hirer of the independent contractor is no longer viable.

2) Viability of Employee's Negligent Hiring Claim after Privette and Toland

We next consider the continued viability of a claim for negligent hiring brought by an employee of an independent contractor. In Privette, the Supreme Court held that the hirer of an independent contractor who hires the contractor to perform inherently dangerous work, that is, work involving a "peculiar risk," may not be held liable to an employee of the independent contractor injured as a result of the independent contractor's negligence. The court explained: "When an employee of the independent contractor hired to do dangerous work suffers a work-related injury, the employee is entitled to recovery under the state's workers' compensation system. That statutory scheme, which affords compensation regardless of fault, advances the same policies that underlie the doctrine of peculiar risk. Thus, when the contractor's failure to provide safe working conditions results in injury to the contractor's employee, additional recovery from the person who hired the contractora nonnegligent partyadvances no societal interest that is not already served by the workers' compensation system." (Privette, supra, 5 Cal.4th at p. 692, 21 Cal.Rptr.2d 72, 854 P.2d 721.)
The Privette court held that a hirer of an independent contractor was not liable to that contractors' employee for peculiar risk claims arising under Restatement section 416, which provides that one who hires an independent contractor to perform inherently dangerous work, and who makes provisions "in the contract or otherwise" that special precautions be taken with regard to the peculiar risk involved, will nonetheless be responsible to third parties for injuries resulting from the independent contractor's negligence. After Privette, lower courts disagreed over whether the opinion also barred actions by employees of independent contractors brought pursuant to Restatement section 413. (Toland, supra, 18 Cal.4th at p. 257, 74 Cal.Rptr.2d 878, 955 P.2d 504.) The language of Restatement section 413 differs from section 416 in one respect. It provides that one who hires an independent contractor to perform dangerous work, but fails to provide for special precautions by contract or otherwise, can be held liable to third parties injured as a result of the independent contractor's negligent performance of the work. Because of the disagreement among the lower courts on the breadth of Privette, the Supreme Court in Toland was called upon to revisit the question of a hirer's duty to employees of independent contractors in the context of peculiar risk, and to decide whether Privette barred only those claims brought under Restatement section 416, or also those brought pursuant to section 413.
In Toland, the plaintiff argued that the substantive difference between sections 416 and 413 of the Restatement mandated their different treatment by the court in assigning fault to and imposing liability upon a hirer of an independent contractor for injuries to that independent contractor's employee. To that end, the plaintiff asserted that the liability to be imposed on the hirer by Restatement section 416 constituted "vicarious liability," because it did not result from any personal negligence on the part of the hirer, but rather from the independent contractor's failure to take the special precautions provided for by the hirer "in the contract or otherwise." The plaintiff contended that under section 416 it made sense to immunize the hirer from *881 employee actions, because it had done no independent wrong. In contrast, the plaintiff characterized the liability under section 413 as "direct liability" because it arose when the hirer had failed to provide for special precautions in light of the peculiar risk of the contracted for work. Thus, plaintiff argued, it was appropriate to hold the hirer directly responsible for its wrong. (Toland, supra, 18 Cal.4th at p. 264, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
The court in Toland rejected the distinction drawn by plaintiff, "for liability under these sections is neither purely direct nor purely vicarious." (Toland, supra, 18 Cal.4th at p. 264, 74 Cal.Rptr.2d 878, 955 P.2d 504.) The court explained: "under both sections 413 and 416, the hiring person's liability is cast in the form of the hiring person's breach of a duty to see to it that special precautions are taken to prevent injuries to others; in that sense, the liability is `direct.' Yet, peculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence `vicarious' or `derivative' in the sense that it derives from the `act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (Id. at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
After reviewing the rationale of the Privette decision, the Toland court concluded that no meaningful distinction could be made between the two Restatement sections for purposes of imposing liability under the peculiar risk doctrine. Whichever section formed the basis for an employee's claim against the hirer to recover for injuries caused by the independent contractor's negligence, the claim was barred. "In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (Toland, supra, 18 Cal.4th at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
Since Toland, lower courts have grappled with another question that the Supreme Court left unanswered: May an employee of an independent contractor still assert claims against the hirer of the independent contractor under tort-based theories of liability other than those encompassed in Restatement sections 413 and 416? For example, in Grahn, supra, decided after Privette and before Toland the court held that a property owner could be held liable for allowing an employee of an independent contractor to be exposed to asbestos while working on its premises. The employee asserted three theories of negligence against the property owner: negligent hiring of the contractor, negligent exercise of control over the contractors work, and negligent use and maintenance of the premises. (Grahn, supra, 58 Cal.App.4th at pp. 1380, 1389, 68 Cal. Rptr.2d 806.) After analyzing the rationale for the decision in Privette, the court concluded that "Privette did not abrogate the law in California that a hirer of an independent contractor may be liable to the independent contractors employee for the hirers own independent fault." (Grahn, supra, at p. 1379, 68 Cal.Rptr.2d 806.) Rather, "Privette is limited to cases of peculiar risk seeking to impose liability on hirers of independent contractors vicariously under the rubric of a nondelegable duty. It does not impair the right of an injured employee to sue the hirer for causes of action not based on principles of vicarious liability." (Id. at p. 1389, 68 Cal. Rptr.2d 806.) And recently, the Supreme Court has granted review to consider the issue in Camargo v. Tjaarda Dairy (2000) 79 Cal.App.4th 1088, 94 Cal.Rptr.2d 680 (review granted July 26, 2000, S088632) and McKown v. Wal-Mart Stores, Inc. (2000) 82 Cal.App.4th 562, 570, 98 Cal. Rptr.2d 214 (review granted October 18, 2000, S091097).
We enter the fray to decide the same question as did the court in Grahn. We, however, conclude that a claim of negligent hiring against the hirer of an independent contractor brought by an employee of the *882 contractor is no longer viable under the reasoning of Privette as explained by Toland. First, we reiterate the policy rationale underlying those decisions, as stated by Toland: "it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractors negligence towards the contractors employees than the independent contractor whose liability is limited to providing workers compensation coverage. Imposing on the hiring person a liability greater than that incurred by the independent contractor (the party with the greatest and most direct fault) is equally unfair and illogical whether the hiring persons liability is premised on the theory of section 413 (hiring person who fails to provide for special precautions liable for contractors negligence) or the theory of section 416 (hiring person liable for contractors negligence in spite of providing that the contractor take special precautions)." (Toland, supra, 18 Cal.4th at p. 270, 74 Cal. Rptr.2d 878, 955 P.2d 504.)
Grahn concluded that the policy considerations at play in Privette had no application to an employees claim for negligent hiring. The case characterized negligent hiring as a theory of "personal" or "independent" liability, rather than vicarious liability. (Grahn, supra, 58 Cal.App.4th at p. 1391, 68 Cal.Rptr.2d 806.) Grahn reasoned that the liability imposed upon a hirer of an independent contractor that it knew or should have known was incompetent was based entirely upon the hirers own negligence in entrusting the job to the independent contractor. (Ibid.) Thus, it concluded, the recovery by the employee from the hirer for its negligence did not constitute a windfall or double recovery, because the fault of the hirer was separate and independent from the fault of the incompetent independent contractor. (Id. at pp. 1384-1395, 68 Cal.Rptr.2d 806.)
In "seeking to divine the scope of Privette," Grahn, of course, did not have the benefit of the Toland decision. (Grahn, supra, 58 Cal.App.4th at p. 1382, 68 Cal. Rptr.2d 806.) We, fortunately, do have that advantage, and decide the question differently. Given Tolands discussion of "direct" and "vicarious" liability, and its conclusion that the often-drawn distinction between the two is misleading, we conclude that a claim for negligent hiring should not be treated any differently than the claim brought pursuant to Restatement section 413 in Toland. We see no practical difference between the liability sought to be imposed on a hirer who fails to provide for special precautions and one who fails to ensure that the independent contractor it hires can perform the work without creating an unreasonable risk of injury to others. In either case, an employees claim will never arise unless the independent contractor does something wrong, causing the employees injury. When that happens, the employee is entitled to workers compensation benefits, and may not pursue a claim against the independent contractor. Also, in either case, a recovery against the hirer would result in the imposition of a greater liability on the hirer than on the party responsible for the injuries. Such an outcome was unfair and illogical under the facts presented in Toland, and would be unfair and illogical in this case as well.
For these very policy reasons, the court in Toland held that a hirer "has no obligation to specify the precautions an independent hired contractor should take for the safety of the contractors employees. Absent an obligation, there can be no liability in tort." (Toland, supra, 18 Cal.4th at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504, italics in original.) We take our cue from Toland in deciding that Minster could not pursue his claim of negligent hiring against Contadina because its duty to third parties to exercise care in selecting a "competent and careful contractor" did not extend to Minster, as Plants employee.

B. Negligent Control of Premises

Minster's complaint also alleged that Contadina was liable for injuries he sustained from exposure to asbestos during *883 the time he worked at Contadina's facility, because Contadina retained control over the details of Plant's work. Minster asserted that Contadina negligently exercised that control by providing brooms, dustpans and hoses for use during cleanup, which were responsible for stirring up the asbestos-containing dust he inhaled. This theory of liability is addressed in the Restatement, at section 414: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Thus, where the hirer either directly manages the means and methods of the independent contractor's work or provides the specific equipment responsible for causing the injury, it will be liable to third parties injured as a result of the independent contractor's negligence.[6] (Grahn, supra, 58 Cal.App.4th at p. 1393, 68 Cal.Rptr.2d 806.)
At his deposition, Minster testified that the tools and materials he used on the job at Contadina were either his own or were provided by Plant, that he received no job instructions from any Contadina employee, and that he had no contact with any Contadina employee. Contadina relied upon this deposition testimony in seeking summary adjudication of Minster's claim for negligent exercise of retained control. In opposing the summary judgment, Minster submitted a declaration stating that Contadina had supplied brooms, dustpans and water hoses, which were used by Plant employees to clean up their work area at the end of each day and at the end of the job. He asserted that "the clean-up of the debris from [their] insulation work resulted in the generation of airborne asbestos dust." Pursuant to D'Amico v. Board of Medical Examiners, supra, 11 Cal.3d 1, 22, 112 Cal.Rptr. 786, 520 P.2d 10, the trial court disregarded Minster's declaration. (See fn. 4, ante, p. 874.)
Minster contends on appeal that the trial court erred in disregarding his declaration, because it did not contradict his deposition testimony, but supplemented it. He claims that the questions at his deposition only concerned the tools he used in his insulation work, and not the tools he used in cleaning up after his insulation work. The deposition transcript does not support his assertion. He was asked: "Did you use any tools in the course of your work at Contadina?" After responding "Yes," he was asked "Were those tools all your own?" He again responded affirmatively. When asked if he received "any tools for this job from anyone from Contadina," he replied "No, I did not."
The deposition questions were broad enough to encompass tools for every phase of Minster's work, including clean up. Furthermore, if the brooms and dustpans were the items responsible for Minster's injuries, we would expect that he would have mentioned them during his deposition on the subject, the very purpose of which was to elicit facts in support of his claims against Contadina. "[A]dmissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained ... in the context of an established pretrial procedure whose purpose it is to elicit facts." (D'Amico v. Board of Medical Examiners, supra, 11 Cal.3d at p. 22, 112 Cal.Rptr. 786, 520 P.2d 10.) A plaintiffs declaration will be disregarded on summary judgment when it contradicts a prior, unequivocal statement made in a deposition. (Scheiding v. Dinwiddie Construction, supra, 69 Cal.App.4th at p. 77, 81 *884 Cal.Rptr.2d 360.) The trial court did not err in refusing to consider the declaration.
Even if Minster's declaration should have been considered, we hold it was insufficient to create a triable issue of material fact regarding Contadina's duty to him. Minster maintains that by providing the brooms, dustpans and hoses for clean-up, Contadina retained sufficient control over the work performed by Plant to impose upon it a legal duty of care to third parties, including Plant's employees. He contends that the equipment provided by Contadina "dictated the method of clean up." No evidence supports this contention nor can such an inference be reasonably drawn from the evidence presented. The only evidence is that the equipment was provided, not that the manner of its use was dictated by Contadina. In fact, Minster's declaration makes clear that it was not the brooms, dustpans and hoses that allegedly caused his asbestos-related injuries; it was the airborne asbestos dust. Thus, while the manner in which Plant's employees used the tools to clean up their work area might have stirred up the dust, because there is no evidence that anyone from Contadina dictated how the clean up should be performed, it could not be liable for injuries resulting from the dust created during clean-up. (See McDonald v. Shell Oil Co. (1955) 44 Cal.2d 785, 285 P.2d 902 [hirer not liable for injuries incurred when elevator held up by hirer's rope fell on plaintiff/employee, because rope broke as a result of defects in independent contractor's equipment, not in the rope itself].) Summary adjudication of this cause of action was proper.

IV. Conclusion and Disposition
We hold that for the policy reasons expressed in Privette v. Superior Court (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 and Toland v. Sunland Housing Group (1998) 18 Cal.4th 253, 74 Cal. Rptr.2d 878, 955 P.2d 504, an employee of an independent contractor may not pursue a claim for negligent hiring against a hirer of the independent contractor because the hirer's duty to third parties to hire a "competent and careful contractor" does not extend to employees of independent contractors. We affirm the trial court's finding that Minster failed to create any triable issue of material fact to sustain his claim against Contadina for negligently retained control of work premises. The summary judgment entered for Contadina is affirmed; it shall recover its costs on appeal.
McGUINESS, P.J., and CORRIGAN, J., concur.
NOTES
[1] Contadina Foods. Inc. is a subsidiary of Nestle USA, Inc. The parties refer to respondent as Contadina. For clarity, we do so as well.
[2] Contadina obtained leave to file its motion for summary judgment on shortened lime, to be heard two weeks before trial. The order shortening time indicated that Contadina waived its right to file a reply brief.
[3] In the trial court and on appeal the parties argued only over whether there was sufficient evidence to establish a claim of negligent hiring. In an order dated September 18, 2000, we asked the parties to submit simultaneous letter briefs on the question of the continued viability of Minster's claim in light of Toland.
[4] D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 22, 112 Cal.Rptr. 786, 520 P.2d 10, held that a party could not create a triable issue of material fact by submitting a declaration in opposition to a summary judgment motion that contradicted that party's prior sworn deposition testimony. The trial court here stated it had "concluded that it could disregard the evidence presented by the defendant [sic ] under Unico [sic ]." Both sides agree that in context the court intended to state that it was disregarding the plaintiff s evidence under D'Amico.
[5] All further references to the Restatement Second of Torts will be referred to as Restatement.
[6] For the reasons discussed in section 1II.A.2, ante, we have considerable doubt that this claim remains viable after Toland. However, because we hold that the facts offered by Minster in opposing the summary judgment were insufficient to establish a triable issue of material fact as to this cause of action, we need not reach the question. (See Toland, supra, 18 Cal.4th at p. 264, fn. 2, 74 Cal. Rptr.2d 878, 955 P.2d 504.)