**Rosalie Jean NELSON, Plaintiff,**

v.

**AIR AND LIQUID SYSTEMS CORPORATION, et al., Defendants.**

Case Nos. CV 12–00793–MWF (AGRx), CV 12–00811–MWF (AGRx).

United States District Court, C.D. California.

Feb. 12, 2013.

Jennifer L. Bartlett, Simon, Greenstone, Panatier, Bartlett, LP, Jordan Blumenfeld–James, Brian P. Barrow, Simon, Eddins and Greenstone, Long Beach, CA, for Plaintiff.

Darren P. Johnson, Frank C. Olah, Bradley William Gunning, Geoffrey M. Davis, Stephen Pavel Farkas, Sheena Yon–Jung Kwon, Michael H. Bailey, Melissa S. Fink, Baker, Keener & Nahra, Kevin D. Jamison, Previn A. Wick, Kelly A. Sze, Karen B. Goldberg, Joanna MacQueen, Lara M. Kruska, Lisa Marie Petrovsky, Karen Lynn Finateri Silbiger, Celeste M. Brecht, Farah Sohaili Nicol, William J. Sayers, Los Angeles, Jeremy David Milbrodt, Kenneth B. Prindle, Long Beach, Douglas G. Wah, Nicole Brown Yuen, Sandy Yee–Wah Liu, Christine L. Hawkins, Khaled Taqi–Eddin, Rochelle R. Ileto, Oakland, E. Reno Cross, Jeffery J. Fadeff, Reshma A. Bajaj, San Francisco, Henry D. Rome, Lisa K. Rauch, Redwood City, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MICHAEL W. FITZGERALD, District Judge.

This matter is before the Court on six motions for summary judgment filed by Defendants in these related actions: (1) Defendant Crane Co.'s Motion for Summary Judgment (CV 12–00793, Docket No. 193); (2) Defendant The Nash Engineering Company's Motion for Summary Judgment (CV 12–00793, Docket No. 195); (3) Defendant Alfa Laval's Motion for Summary Judgment, or Alternatively, Partial Summary Judgment (CV 12–00793, Docket No. 212); (4) Defendant Kaiser Gypsum Company, Inc.'s Motion for Summary Judgment, or Alternatively, Partial Summary Judgment Re: Punitive Damages (CV 12–00793, Docket No. 219); (5) Defendant Buffalo Pumps, Inc.'s Motion for Summary Judgment or Partial Summary Judgment (CV 12–00811, Docket No. 118); and (6) Defendant Union Carbide Corp.'s Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (CV 12–00811, Docket Nos. 130, 133) (collectively, the "Motions"). The Court has read and considered the papers filed on the Motions and held a hearing on February 1, 2013.

### PROCEDURAL BACKGROUND

Plaintiff Rosalie Jean Nelson is the widow of Decedent Roger Nelson. (*See* Notice of Removal (CV 12–00793, Docket No. 1)). On May 17, 2011, the Nelsons initiated a civil action in Hawaii state court. (*Id.* ¶ 2). On June 10, 2011, Roger Nelson provided deposition testimony in this Hawaii action. (*Id.* ¶ 5). On November 28, 2011, the Nelsons dismissed the Hawaii action after the case had been removed to federal court and transferred to Multidistrict Litigation No. 875. (*Id.* ¶ 2).

On December 21, 2011, Rosalie Nelson initiated this action in California Superior Court. (*Id.* ¶ 1). On January 27, 2012, Defendant Crane Co. removed this action on the basis of federal officer jurisdiction pursuant to 28 U.S.C. § 1442. (*Id.* ¶ 8). Separately, on January 30, 2012, Defendant Air and Liquid Systems Corp. ("Air and Liquid," successor by merger to Buffalo Pumps, Inc.), removed this action on the basis of federal officer removal. (*See* CV 12–00811, Docket No. 1).

Rosalie Nelson since has dismissed a number of Defendants in these related actions.

The Court here addresses two procedural issues:

*First,* Nelson does not dispute that subject matter jurisdiction is proper in this Court pursuant to Section 1442. Nor is there any question that one Defendant (or, in this case, two Defendants) can remove the entire action from state court even if federal officer removal otherwise would not apply as to some Defendants. *See Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.,* 644 F.2d 1310, 1315 (9th Cir.1981)("Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court.").

Moreover, the Court notes that removal pursuant to Section 1442 is predicated in part on a "colorable" federal defense. *See Mesa v. California,* 489 U.S. 121, 133, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Yet, none of the Motions asserts any federal defense.

 Nevertheless, it appears to the Court, and Nelson does not argue to the contrary, that subject matter jurisdiction still exists over this action. As the Fourth Circuit stated in *Jamison v. Wiley,* 14 F.3d 222 (4th Cir.1994), "When a case has been properly removed under § 1442(a), the district court may remand it back to state court only if it thereafter discovers a defect in removal procedure or a lack of subject matter jurisdiction in the federal court." *Id.* at 238–39 (citation omitted). "That the federal court ultimately rejects the federal defense that supported removal under § 1442(a)(1) does not mean that it thereby loses subject matter jurisdiction over the removed action." *Id.* at 239; *see also Thompson v. Crane Co.,* Civil No. 11–00638 LEK–RLP, 2012 WL 1344453, *20 n. 16 (D.Haw. Apr. 17, 2012) ("As a general rule, the existence of removal jurisdiction is determined at the time the removal petition is filed, irrespective of subsequent events. Federal courts have applied this general rule to federal officer removal jurisdiction." (citations omitted)).

*Second,* the Court also notes that no Defendant has made any argument as to issue or claim preclusion on account of the Nelsons' earlier Hawaii action.

### FACTUAL BACKGROUND

There is no dispute as to the following facts:

Roger Nelson served in the United States Navy and Navy Reserves as an Operations and Communications Officer aboard the USS Mansfield from 1960 to 1963 and the USS Alvin C. Cockrell from 1963 to 1968. (*See* Plaintiff's Statement of Controverted Facts (CV 12–00811, Docket No. 137–1)).

In addition, Roger Nelson worked with drywall products on numerous home remodeling and repair projects from the 1950s through the 1970s. (*See* Plaintiff's Statement of Controverted Facts (CV 12–00793, Docket No. 236–1)).

Rosalie Nelson alleges that Roger Nelson was exposed to asbestos from Defendants' products, resulting in the diagnosis

of an asbestos-related disease and his eventual death.

### APPLICABLE LAW

"[W]hen removal of a state court action is available because the defendant is a federal officer, the substantive law to be applied is unaffected by the removal. If state law was applicable before the removal, it will apply after the removal." 14C Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 3726 (4th ed. 2012) (citing *Arizona v. Manypenny*, 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981)).

Nelson's Complaint for wrongful death alleges claims for relief under California law for negligence and strict products liability, as well as conspiracy. (*See* Notice of Removal Ex. 1). Consequently, California law governs in this case.

### DISCUSSION

The law in California is clear:

A threshold issue in asbestos litigation is exposure to the defendant's product. The plaintiff bears the burden of proof on this issue. If there has been no exposure, there is no causation. Plaintiffs may prove causation in an asbestos case by demonstrating that the plaintiff's or decedent's exposure to the defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate dose of asbestos the plaintiff or decedent inhaled or ingested, and hence to the risk of developing asbestos-related cancer.

*McGonnell v. Kaiser Gypsum Co.*, 98 Cal. App.4th 1098, 1103, 120 Cal.Rptr.2d 23 (2002) (citations omitted) (citing *Rutherford v. Owens–Illinois, Inc.*, 16 Cal.4th 953, 975–76, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (1997)); *see also O'Neil v. Crane Co.*, 53 Cal.4th 335, 345, 135 Cal.Rptr.3d 288,

266 P.3d 987 (2012) ("To the extent [the decedent] was exposed to dust generated during work on pumps and valves, no evidence was presented that any of the asbestos-containing dust came from a product made by [the defendants].").

■ As the California Supreme Court has stated, the "substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Rutherford,* 16 Cal.4th at 978, 67 Cal.Rptr.2d 16, 941 P.2d 1203; *see also Jones v. Ortho Pharm. Corp.,* 163 Cal. App.3d 396, 403, 209 Cal.Rptr. 456 (1985) ("The fact that a determination of causation is difficult to establish cannot ... provide a plaintiff with an excuse to dispense with the introduction of some reasonably reliable evidence proving this essential element of his case.").

Furthermore, the California Court of Appeal has stated the following, two-part test: The "proper analysis is to ask [1] whether the plaintiff has proven exposure to a defendant's product, of whatever duration, so that exposure is a possible factor in causing the disease and then [2] to evaluate whether the exposure was a substantial factor." *Lineaweaver v. Plant Insulation Co.,* 31 Cal.App.4th 1409, 1416, 37 Cal.Rptr.2d 902 (1995); *see also Andrews v. Foster Wheeler LLC,* 138 Cal.App.4th 96, 102, 41 Cal.Rptr.3d 229 (2006) ("To ultimately prevail in their underlying claim, plaintiffs would need to establish that [the plaintiff]'s exposure to a product attributable to [the defendant] was to a reasonable medical probability a substantial factor in contributing to any asbestos-related disease suffered by him....").

■ Therefore, "even under the most lenient causation standards, there must be proof that the defendant's asbestos products or activities were present at plaintiff's

work site." *Smith v. ACandS, Inc.*, 31 Cal.App.4th 77, 89, 37 Cal.Rptr.2d 457 (1994) ("We appreciate the difficulty of proving exposure to a particular defendant's products or activities in cases of latent diseases where memory-dulling decades can intervene between toxic exposure and prosecution of an action for damages."), *overruled in part on other grounds by Camargo v. Tjaarda Dairy*, 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (2001).

*McGonnell*, 98 Cal.App.4th 1098, 120 Cal.Rptr.2d 23, is instructive. In that case, the California Court of Appeal affirmed the trial court's grant of summary judgment in favor of the defendant, finding that the decedent "had no knowledge of any exposure to Kaiser products, let alone any Kaiser products that contained asbestos," and that the plaintiffs' evidence "showed [the decedent] would cut into walls and disturb building materials. Unfortunately for plaintiffs, they had little evidence that [the decedent] disturbed Kaiser products, and virtually no evidence he had disturbed Kaiser products containing asbestos." *Id.* at 1103–04, 120 Cal.Rptr.2d 23.

The court concluded: "All that exists in this case is speculation that at some time [the decedent] might have cut into a wall that might have contained Kaiser joint compound that might have contained asbestos. The evidence creates only 'a dwindling stream of probabilities that narrow into conjecture.'" *Id.* at 1105, 120 Cal.Rptr.2d 23 (citation omitted); *see also Smith*, 31 Cal.App.4th at 89, 37 Cal.Rptr.2d 457 ("Here, only rank speculation, not reasonable inferences, could support a conclusion that [the plaintiff] was exposed to [defendant]-installed asbestos materials. Lacking proof of causation, all of [the plaintiff]'s claims against [the defendant] fail.").

Each Motion makes the same argument: Rosalie Nelson has adduced insufficient evidence to create a triable issue of fact that Roger Nelson was exposed to asbestos from Defendant's product.

In deciding these Motions under Rule 56, the Court applies *Anderson, Celotex*, and their Ninth Circuit progeny. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

For ease of review, the Court separates out the Motions filed by those Defendants which supplied products to the U.S. Navy from those which supplied home remodeling products. The Motions then are addressed alphabetically by Defendant within each subgroup.

### "U.S. Navy" Defendants

### *Air and Liquid*

█ It is undisputed that, during the relevant time period, Buffalo Pumps (now Defendant Air and Liquid) manufactured and sold pumps that contained asbestos gaskets and packing, as well as asbestos-containing replacement parts (*e.g.*, gaskets and packing). (*See* Opp. at 7). Likewise, it is undisputed that, at least at some point during the relevant time period, there were Buffalo pumps in the forward engine room aboard the USS Mansfield. (*See* Opp. at 6). There is also evidence that Roger Nelson spent some amount of time in the forward engine room. (*See* Opp. at 4).

At the hearing, counsel for Nelson argued that this circumstantial evidence is sufficient to demonstrate exposure. Air and Liquid contends that, even accepting this evidence and all reasonable inferences therein, it would be speculative to presume that Roger Nelson was exposed to asbestos from any Buffalo Pumps product.

In his deposition, Roger Nelson stated that he did not know the brand name, manufacturer or supplier of any equipment aboard the USS Mansfield and did not know the maintenance history of any such equipment. (CV 12–00811, Docket No. 137–1 at 3). Nor does Rosalie Nelson contend that all pumps aboard the USS Mansfield were manufactured by Buffalo Pumps.

Roger Nelson did not personally perform any maintenance or repair on any piece of equipment, including pumps, during his time in the Navy and Navy Reserves, although he did work in the presence of others performing maintenance on pumps. (CV 12–00811, Docket No. 137–1 at 2). Regardless, there is no evidence that Roger Nelson worked with any Buffalo Pumps gaskets and packing or that Roger Nelson was ever nearby when someone else did. The fact that the USS Mansfield was undergoing a major overhaul when Roger Nelson first reported, or that there may have been subsequent repair work to any pumps, does not change this result. (*See* Opp. at 2–3); *cf. Grahn v. Tosco Corp.*, 58 Cal.App.4th 1373, 1397, 68 Cal.Rptr.2d 806 (1997) ("[The defendant] points out that asbestos materials do not pose a health risk when they are intact and undisturbed. Consequently, the mere presence of undisturbed asbestos in [the defendant]'s refinery is not a 'dangerous condition' of the property .... asbestos-containing materials are dangerous only if damaged or disturbed....").

According to the Moore Declaration (*see* CV 12–00811, Docket No. 137), "Mr. Nelson testified he spent time in the machinery spaces aboard these ships to conduct emergency drills and check on shipyard repairs. Due to a lack of warnings concerning the hazards of asbestos exposure, he and other sailors were exposed to airborne asbestos fibers." (*Id.* at 19). But there is still no evidence that Roger Nelson was exposed to asbestos from a Buffalo Pumps product.

Likewise, the Mark Declaration (*see* CV 12–00811, Docket No. 137) opines that asbestos exposures were a "substantial contributing factor and a medical cause of Mr. Nelson's diffuse malignant mesothelioma, which caused his death." (*Id.* at 1). Dr. Mark bases this opinion on the premise that "Mr. Nelson was in close proximity to others as they did work removing and installing asbestos-containing gaskets and packing from various pieces of equipment, including but not limited to: Buffalo pumps." (*Id.; see also id.* at 5 ("I know that asbestos-containing gaskets and packing were removed in Mr. Nelson's presence.")). This opinion assumes its conclusion—there is no record evidence to support the premise that Roger Nelson was exposed to asbestos from a Buffalo Pumps product.

In the end, the evidence supports only conjecture that (1) Nelson was in the proximity of others working on a Buffalo Pump product that contained asbestos; and (2) Nelson was exposed to asbestos from that Buffalo Pumps product.

Accordingly, Air and Liquid's Motion (CV 12–00811, Docket No. 118) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Air and Liquid.

### *Alfa Laval*

■ Defendant Alfa Laval (formerly DeLaval Separator Company) manufactured marine oil purifiers that were sold to the U.S. Navy. (*See* Opp. at 7). These purifiers contained asbestos components, including gaskets, packing and brake pads. (*See* Opp. at 7). It appears that there were Alfa Laval purifiers aboard the USS Mansfield during Roger Nelson's service. (*See* Opp. at 6).

■ However, Roger Nelson's deposition testimony in the Hawaii action is the only evidence regarding his work aboard the USS Mansfield. Alfa Laval was not a party to the Hawaii action and had no notice of the deposition or opportunity to cross-examine Roger Nelson before he died. (*See* Reply at 2). Consequently, Rosalie Nelson cannot introduce this testimony against Alfa Laval. *See* Fed. R.Civ.P. 32(a)(1)(A) ("At a hearing or trial, all or part of a deposition may be used against a party on these conditions: . . . the party was present or represented at the taking of the deposition or had reasonable notice of it. . . .").

Even if the Court were to consider the deposition testimony, there is likewise no evidence that Roger Nelson worked on, or around others working on, an Alfa Laval purifier. (*See* Reply at 2–3). It would require speculation to conclude that Roger Nelson was exposed to asbestos from an Alfa Laval product.

Accordingly, Alfa Laval's Motion (CV 12–00793, Docket No. 212) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Alfa Laval.

### Crane

■ The analysis of Defendant Crane's Motion is comparable to that of Air and Liquid. During the relevant time period, Crane manufactured and sold valves containing asbestos components. (*See* Opp. at 6). Even assuming that Crane valves were aboard the USS Mansfield and/or the USS Cockrell, and that Roger Nelson was present while others worked on valves, there is no evidence that Roger Nelson was present during any work on a *Crane* valve. (*See* Reply at 4). The record is clear that Crane was not the exclusive supplier of valves to the U.S. Navy during this time period. (*See* Reply at 4 n. 2). Again, it would require speculation to conclude that

Roger Nelson was exposed to asbestos from a Crane product.

Accordingly, Crane's Motion (CV 12–00793, Docket No. 193) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Crane.

### Nash

■ The Motion filed by Defendant The Nash Engineering Company's ("Nash") compels the same result. It appears from the record that there were Nash pumps aboard the USS Mansfield. (*See* Opp. at 6). And during the relevant time period Nash did manufacture and sell pumps which contained asbestos components (*e.g.*, gaskets and packing). (*Id.*)

However, there is no record evidence that Roger Nelson worked with any Nash pumps or that he was present when others performed maintenance on Nash pumps. (*See* Reply at 3–4). It would be conjecture for the Court (and a jury) to presume from Rosalie Nelson's general assertions that Roger Nelson was exposed to asbestos from any Nash product.

Accordingly, Nash's Motion (CV 12–00793, Docket No. 195) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Nash.

### "Home Remodeling" Defendants

The record as against the "Home Remodeling" Defendants is somewhat different, but the conclusion is the same.

### Kaiser

■ Defendant Kaiser Gypsum Company, Inc. ("Kaiser") likewise argues that there is insufficient evidence that Roger Nelson was exposed to asbestos from any Kaiser product. In this respect, the following facts are not disputed: Kaiser manufactured and sold drywall products, including joint compound which contained asbestos. (*See* Opp. at 4–7). In 1976, Kaiser ceased manufacturing joint com-

pound products that contained asbestos. (*See* Reply at 2). Roger Nelson used joint compound products in performing numerous house remodeling and repair projects on personal residences as early as the 1950s and as late as the 1970s. (*See* Docket No. 236–1). For these projects, Roger Nelson testified that he recalled using joint compound sold by a number of manufacturers, including Kaiser. (*See* Opp. at 4). However, Roger Nelson could not say *when* he used joint compound sold by Kaiser or any other manufacturer.

Unlike the products manufactured by the "U.S. Navy" Defendants, the record is clear that Roger Nelson was exposed to a Kaiser joint compound product. But the record is just as clear that there is no evidence that Roger Nelson was exposed to a Kaiser joint compound product *before 1976*—*i.e.,* when any such product would have contained asbestos. Without more, it would be speculative to assume that Roger Nelson had been exposed to any Kaiser product containing asbestos.

At the hearing, Nelson's counsel argued that Roger Nelson primarily used "dry-mix" (as opposed to pre-mix) joint compound products, and that it was the dry-mix products which contained asbestos. According to the opposition brief, Roger "Nelson estimated that he started using the premix joint compounds in the 1970s." (Opp. at 3).

Tellingly, this argument demonstrates the speculation that would be necessary to conclude that Roger Nelson was exposed to asbestos from Kaiser joint compound: Did he purchase Kaiser joint compound before or after 1976? Did he start using pre-mix joint compound before or after 1976? It would be conjecture to suppose that Roger Nelson purchased Kaiser joint compound (1) that was dry-mix, (2) before 1976, and that he consequently was exposed to asbestos therein.

Accordingly, Kaiser's Motion (CV 12–00793, Docket No. 219) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Kaiser.

### Union Carbide

 The claim against Defendant Union Carbide Corp. differs from the others in that Union Carbide was a supplier of raw asbestos. (*See* Opp. at 1). Union Carbide sold raw asbestos to manufacturers of joint compound products, including Kaiser, which then incorporated the asbestos into their products. (*See* Opp. at 1). Consequently, there must be evidence (1) that Roger Nelson was exposed to the relevant joint compounds, and (2) that the joint compounds to which Roger Nelson was exposed contained asbestos supplied by Union Carbide.

At his deposition, Roger Nelson testified that he used five brands of joint compound products: Kaiser, U.S. Gypsum, Georgia Pacific, Gold Bond (National Gypsum) and Kelly–Moore. (*See* Opp. at 1). Roger Nelson also testified that he used "at least one or two local brands." (Roger Nelson Dep. Tr. at 53:10–11 (CV 12–00811, Docket No. 137)).

Union Carbide objects to Roger Nelson's testimony as to his naming of Kaiser, Georgia Pacific, Gold Bond and Kelly–Moore—and, seemingly with good reason. Apparently, at his deposition Roger Nelson only recalled using U.S. Gypsum-brand joint compound and named the others only after his counsel "refreshed his recollection" with a list of manufacturers that was part of an interrogatory response. (*See* Reply at 4–7). Indeed, counsel first asked Roger Nelson, "Can you read them for us," before suggesting (after an objection), "or what you remember after reviewing this." (Roger Nelson Dep. Tr. at 54:16–20). The Court would be inclined to

sustain Union Carbide's evidentiary objection in this regard (CV 12–00811, Docket No. 153–1), but it is unnecessary to do so.

Even considering Roger Nelson's potential exposure to all five of these branded joint compounds, the evidence is insufficient to create a triable issue of fact. As discussed above with respect to Kaiser-brand joint compound, there is no evidence as to when Roger Nelson used any joint compound product. According to Rosalie Nelson's own summary of the relevant facts, each joint compound brand contained asbestos for the following time periods: Kaiser, 1955–1975; U.S. Gypsum, 1920s–1976; Georgia Pacific, 1965–1977; Gold Bond, 1935–1975; and, Kelly–Moore, 1964–1977. (*See* Opp. at 3).

The Court noted above that there is also evidence that Roger Nelson used "local brand" joint compounds. Nevertheless, the reasonable inference is that Roger Nelson used at least one of these five major brand joint compounds during the time period in which that brand of joint compound contained asbestos.

As discussed above with respect to Kaiser, that cannot be said as to any one manufacturer. However, here, Union Carbide supplied asbestos to all five of these manufacturers. The difference is significant because, to the extent that Roger Nelson was exposed to one or more of these joint compounds during the relevant time period(s), he may have been exposed to Union Carbide asbestos therein.

Rosalie Nelson concedes that Union Carbide supplied asbestos to each manufacturer (except Kelly–Moore) for only part of the time period during which each sold joint compound containing asbestos, specifically: Kaiser, 1955–1975 (1968–76); U.S. Gypsum, 1920s–1976 (1968–76); Georgia Pacific, 1965–1977 (1970–77); Gold Bond, 1935–1975 (1967–75); and, Kelly–

Moore, 1964–1977 (1964–77). (*See* Opp. at 3).

Given Roger Nelson's inability to testify as to when he used any particular brand of joint compound, other than at some point in time from the 1950s through the 1970s, there is no evidence that he was exposed to any one of these brands during the time in which Union Carbide supplied asbestos to that particular manufacturer. Again, however, the reasonable inference is that Roger Nelson used one or more of these branded joint compounds during the time period(s) in which these joint compounds contained Union Carbide asbestos.

It is at this point in the analysis that the evidence against Union Carbide becomes too speculative to survive the Motion. The record is clear that Union Carbide was not the exclusive supplier of asbestos to any of these manufacturers. (*See, e.g.,* Reply at 2). Therefore, even assuming that Roger Nelson was exposed to one of the above-branded joint compounds during the time in which that joint compound contained asbestos, and further during the time in which Union Carbide was supplying asbestos to that particular manufacturer, there is still no evidence that the asbestos in the particular joint compound used by Roger Nelson contained asbestos supplied by Union Carbide.

Illustratively, the record evidence demonstrates the following: Union Carbide supplied only 8% of the asbestos used by Kelly–Moore (Reply at 10); Union Carbide was "one of the smaller suppliers of asbestos" to Kaiser (*id.* at 12); U.S. Gypsum "primarily" purchased asbestos from another supplier (*id.* at 14); the Georgia Pacific dry-mix joint compound sold in California never contained asbestos supplied by Union Carbide (*id.* at 16), and Georgia Pacific had multiple other suppliers of asbestos (*id.* at 17); and U.S. Gypsum like-

wise had multiple suppliers of asbestos (*id.* at 9).

Rosalie Nelson's argument with respect to "exclusivity" misapprehends the law. True, there is no requirement that a plaintiff need show that certain asbestos (let alone, certain asbestos fibers) was the exclusive cause of harm—*i.e.,* one may have been harmed by exposure to asbestos from many sources. But, a plaintiff nevertheless must have evidence to demonstrate exposure to asbestos from a given defendant's product—*i.e.,* evidence that asbestos from the defendant's product was at least one such source. On the current record, it is only speculative that Roger Nelson was exposed to asbestos supplied by Union Carbide.

Accordingly, Union Carbide's Motion (CV 12–00811, Docket Nos. 130, 133) is GRANTED. The negligence and strict liability claims are hereby DISMISSED as against Union Carbide.

### *CONCLUSION*

In sum, Rosalie Nelson has adduced insufficient evidence that Roger Nelson was exposed to asbestos from any of these Defendants' products. On this evidence and regardless of what instructions it received, a jury could not rule in favor of Plaintiff on any basis other than conjecture, sympathy and gratitude to Mr. Nelson for his naval service (which the Court shares). The Court need not reach the question whether any such exposure was a substantial factor in causing his illness or death. Therefore, the Motions are GRANTED.

None of the Motions addressed the third claim for conspiracy. However, at the hearing, Nelson's counsel represented that Rosalie Nelson no longer is pursuing this claim. Accordingly, the Motions are likewise GRANTED as to the conspiracy claim, and these actions are DISMISSED

as against Defendants Air and Liquid, Alfa Laval, Crane, Nash, Kaiser and Union Carbide.

IT IS SO ORDERED.